JOSEPH E. SEAGRAM & SONS, INC., ET AL. v. HOS-
TETTER, CHAIRMAN, NEW YORK STATE
LIQUOR AUTHORITY, ET AL.

No. 545.   Argued February 23, 1966.—Decided April 19, 1966.

36

*Thomas F. Daly* and *Jack Goodman* argued the cause for appellants. With them on the briefs was *Herbert Brownell.*

*Ruth Kessler Toch,* Acting Solicitor General of New York, argued the cause for appellees. With her on the brief were *Louis J. Lefkowitz,* Attorney General, and *Robert L. Harrison,* Assistant Attorney General.

*Fred M. Switzer, Abraham Tunick* and *Fred M. Switzer III* filed a brief for Wine & Spirits Wholesalers of America, Inc., as *amicus curiae,* urging reversal.

MR. JUSTICE STEWART delivered the opinion of the Court.

This appeal draws in question certain provisions of Chapter 531, 1964 Session Laws of New York, which worked substantial changes in the State's Alcoholic Beverage Control Law. The appellants are distillers, wholesalers, or importers of distilled spirits, who commenced this action in a New York court for an injunction and declaratory judgment against the appropriate state officials, upon the ground that § 9 of Chapter 531 violates the Federal Constitution in several respects.[1] The trial court upheld the constitutionality of the law,[2] and its

---

[1] The appellants also challenged two minor provisions of § 7 of Chapter 531, 1964 Session Laws of New York. See pp. 51–52, *infra.* The relevant provisions of §§ 7, 8 and 9 of Chapter 531 are set out in the Appendix to this opinion.

[2] 45 Misc. 2d 956, 258 N. Y. S. 2d 442.

judgment was affirmed by the Appellate Division [3] and by the New York Court of Appeals.[4] The appellants brought the case here,[5] and we now affirm the judgment of the Court of Appeals.

Chapter 531 was enacted as the result of a sweeping redirection of New York's policy regulating the sale of liquor in the State. For more than 20 years the Alcoholic Beverage Control Law (hereinafter ABC Law) had required brand owners of alcoholic beverages or their agents to file with the State Liquor Authority monthly schedules listing the bottle and case price to be charged to wholesalers and retailers within the State. These schedules were publicly displayed, and sales were prohibited except at the listed prices.[6] In 1950 the ABC Law was amended by the addition of a section which required brand owners or their agents to file price schedules listing the minimum retail price at which each brand could be sold to consumers and which prohibited retail sales at prices less than those fixed in the schedules.[7] The enforcement of these mandatory minimum retail prices was entrusted to the State Liquor Authority rather than to private action, but the Authority was given no power to determine the reasonableness of the prices that were fixed.

In 1963, against a background of irregularities within the State Liquor Authority and extensive dissatisfaction with the operation of the ABC Law, the Governor of New York appointed a Commission to study the sale and distribution of alcoholic beverages within the State. The

---

[3] 23 App. Div. 2d 933, 259 N. Y. S. 2d 644.

[4] 16 N. Y. 2d 47, 209 N. E. 2d 701.

[5] 382 U. S. 924.

[6] Laws 1942, c. 899, § 1, Alcoholic Beverage Control Law, §§ 101–b–3 (a)–(d) (1946 ed.).

[7] Laws 1950, c. 689, § 1, Alcoholic Beverage Control Law, § 101–c (1964 Supp.).

Commission sponsored various study papers and issued a series of reports and recommendations.[8]  It found unequivocally that compulsory resale price maintenance had had "no significant effect upon the consumption of alcoholic beverages, upon temperance or upon the incidence of social problems related to alcohol."  It also found that New York liquor consumers had been the victims of serious discrimination because of the higher prices and reduced competition fostered by the mandatory minimum price maintenance provision of the law.[9]  The Commission therefore recommended the repeal of that provision,[10] and the ultimate response of the legislature was the enactment of Chapter 531.

The legislature did not stop, however, with repeal of the mandatory resale price maintenance provision of the law.[11]  In § 9 of Chapter 531 it imposed the additional requirement that the monthly price schedules for sales to wholesalers and retailers filed with the State Liquor Authority must be accompanied by an affirmation that "the bottle and case price of liquor . . . is no higher than the lowest price" at which sales were made anywhere in

---

[8] See New York State Legislative Annual 401–408, 484–489, 498–500 (1964); Breuer, Moreland Act Investigations in New York: 1907–65, pp. 131–169 (1965). The Commission's Study Paper Number 5 ("Resale Price Maintenance in the Liquor Industry") and Report and Recommendations No. 3 ("Mandatory Resale Price Maintenance") are part of the record in this case.

[9] Based upon the comparative price data it assembled, including examples of wholesale liquor prices in New York higher than retail prices elsewhere, the Commission concluded that, because of the mandatory resale price maintenance provision, New Yorkers were subsidizing the liquor industry by $150,000,000 a year.

[10] The Commission made various other recommendations, including relaxation of certain restrictions on package store licenses and elimination of some of the conditions imposed on establishments serving liquor by the drink.

[11] The mandatory resale price maintenance provision, § 101–c, was repealed by § 11 of Chapter 531.

the United States during the preceding month. It is this provision that is the principal object of the appellants' constitutional attack in this litigation.

Section 9 effects the "no higher than the lowest price" requirement by the addition of paragraphs (d)–(k) to § 101–b–3 of the ABC Law. The affirmation required by paragraph (d), which must be filed and verified by brand owners or their agents who sell to wholesalers in New York, must cover all sales to wholesalers anywhere in the United States by the brand owner, his agent, or any "related person." The less extensive affirmation required by paragraph (e), which applies to persons other than brand owners or their agents who file schedules for sales to wholesalers, need only cover sales elsewhere by the person filing the schedule. The affirmation required by paragraph (f), which must be filed by brand owners, their agents, or "related persons" who sell to retailers in New York, must be verified by the brand owner or his agent and must cover all sales to retailers anywhere in the United States by the brand owner, his agent, or any "related person." The less extensive affirmation required by paragraph (g), which applies to wholesalers who are not "related persons," need only cover sales elsewhere by the person filing the schedule.[12]

The term "related person" is defined in paragraphs (d) and (f) to include any person, the "exclusive, principal or substantial business of which is the sale of a brand or brands of liquor purchased from" the brand owner or his agent. In consequence, before a "related person"

---

[12] Sellers seeking to take advantage of the milder affirmations required by paragraphs (e) and (g) must file a representation that they are not "related persons." See Alcoholic Beverage Control Law, Appendix, Rule 16 of the State Liquor Authority, § 65.7 (e) (1965 Supp.), 9 NYCRR 65.7 (e). The schedule requirements of § 101–b do not apply to sales of private label brands of liquor. Alcoholic Beverage Control Law, § 101–b–3 (c).

wholesaler may sell a particular brand of liquor to a New York retailer, he must secure an affirmation from the brand owner or his agent that the price charged by the wholesaler is no higher than the lowest price at which the brand was sold to any retailer in any other part of the country by any wholesaler doing "substantial" business with the brand owner. Thus, a brand owner doing business in New York must keep himself informed of the prices charged by all "related persons" throughout the United States.

The scheme of § 9 of Chapter 531 is rounded out by the addition to § 101–b–3 of the ABC Law of paragraph (h), which prohibits sales to wholesalers and retailers of brands for which no affirmation has been filed; paragraph (i), which requires the "lowest price" to reflect all discounts and other allowances to wholesalers and retailers, with the exception of state taxes and delivery costs; and paragraphs (j) and (k), which impose criminal penalties for the filing of a false affirmation.

As a result of a series of stays granted throughout this litigation, the provisions of § 9 have not yet been put into effect. Our concern here, therefore, is only with the constitutionality of those provisions on their face. The appellants attack § 9 on many constitutional fronts. They contend that its provisions place an illegal burden upon interstate commerce, conflict with federal antitrust legislation and thus fall under the Supremacy Clause, and violate both the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment. We find all these contentions without merit.

Consideration of any state law regulating intoxicating beverages must begin with the Twenty-first Amendment, the second section of which provides that: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof,

is hereby prohibited." As this Court has consistently held, "That Amendment bestowed upon the states broad regulatory power over the liquor traffic within their territories." *United States* v. *Frankfort Distilleries,* 324 U. S. 293, 299. Cf. *Nippert* v. *Richmond,* 327 U. S. 416, 425, n. 15. Just two Terms ago we took occasion to reiterate that "a State is totally unconfined by traditional Commerce Clause limitations when it restricts the importation of intoxicants destined for use, distribution, or consumption within its borders." *Hostetter* v. *Idlewild Liquor Corp.,* 377 U. S. 324, 330. See *State Board of Equalization* v. *Young's Market Co.,* 299 U. S. 59; *Mahoney* v. *Joseph Triner Corp.,* 304 U. S. 401; *Ziffrin, Inc.* v. *Reeves,* 308 U. S. 132; *California* v. *Washington,* 358 U. S. 64. Cf. *Indianapolis Brewing Co.* v. *Liquor Comm'n,* 305 U. S. 391; *Joseph S. Finch & Co.* v. *McKittrick,* 305 U. S. 395. As the *Idlewild* case made clear, however, the second section of the Twenty-first Amendment has not operated totally to repeal the Commerce Clause in the area of the regulation of traffic in liquor. In *Idlewild* the ultimate delivery and use of the liquor was in a foreign country, and the Court held that under those circumstances New York could not forbid sales made under the explicit supervision of the United States Customs Bureau, pursuant to laws enacted by Congress under the Commerce Clause for the regulation of commerce with foreign nations. Cf. *Dept. of Alcoholic Beverage Control* v. *Ammex Warehouse Co.,* 378 U. S. 124; *Collins* v. *Yosemite Park Co.,* 304 U. S. 518.

Unlike *Idlewild,* the present case concerns liquor destined for use, distribution, or consumption in the State of New York. In that situation, the Twenty-first Amendment demands wide latitude for regulation by the State. We need not now decide whether the mode of liquor regulation chosen by a State in such circumstances could ever constitute so grave an interference with a

company's operations elsewhere as to make the regulation invalid under the Commerce Clause.[13]  See *Baldwin v. G. A. F. Seelig*, 294 U. S. 511.  No such situation is presented in this case.  The mere fact that § 9 is geared to appellants' pricing policies in other States is not sufficient to invalidate the statute.  As part of its regulatory scheme for the sale of liquor, New York may constitutionally insist that liquor prices to domestic wholesalers and retailers be as low as prices offered elsewhere in the country.  The serious discriminatory effects of § 9 alleged by appellants on their business outside New York are largely matters of conjecture.  It is by no means clear, for instance, that § 9 must inevitably produce higher prices in other States, as claimed by appellants, rather than the lower prices sought for New York.  It will be time enough to assess the alleged extraterritorial effects of § 9 when a case arises that clearly presents them.  "The mere fact that state action may have repercussions beyond state lines is of no judicial significance so long as the action is not within that domain which the Constitution forbids."  *Osborn* v. *Ozlin*, 310 U. S. 53, 62.  Cf. *Hoopeston Canning Co.* v. *Cullen*, 318 U. S. 313; *South Carolina Highway Dept.* v. *Barnwell Bros.*, 303 U. S. 177, 189; *Baldwin* v. *G. A. F. Seelig*, 294 U. S. 511, 528.

Moreover, as the Court of Appeals observed, the regulatory procedure followed by New York is comparable to that practiced by those States, 17 in number, in which liquor is sold by the State itself and not by private enterprise.  Each of these monopoly States, we are told, requires distillers to warrant that the price charged the

---

[13] Cf. *United States* v. *Frankfort Distilleries*, 324 U. S. 293, 299, where we stated that the Twenty-first Amendment "has not given the states plenary and exclusive power to regulate the conduct of persons doing an interstate liquor business outside their boundaries." See also Note, The Twenty-first Amendment Versus the Interstate Commerce Clause, 55 Yale L. J. 815 (1946).

State is no higher than the price charged in other States. In at least one of these States, the distillers are required to adjust the sales price to include all rebates and other allowances made to purchasers elsewhere, and the State has taken positive precautions to insure that the contractual commitments are fulfilled.[14]   In some respects,

[14] The executive vice-president of one of the appellants testified that "We and other distillers have freely entered into contracts with these monopoly states in which we warrant that the f. o. b. prices at which our brands are offered to those states are no higher than the lowest price at which we sell in other states."

The Deputy Commissioner of the State Liquor Authority testified that "[I]n a number of other States, e. g., in the State of Pennsylvania, some of these same plaintiffs have been warranting for some time past that the price quoted to the Pennsylvania Liquor Control Board is 'the lowest current price quoted to any other customer,' or 'to any purchaser, dealer, agent or agency of any nature or kind anywhere in the United States of America.'" The same witness later added that "[A]s part and parcel of the offerings of their products in, for example, the State of Pennsylvania, they warrant that 'if and when special cash or commodity allowances, post-offs or discounts are offered to purchasers in any other State or the District of Columbia, the same' shall also be offered the Pennsylvania Liquor Control Board."

The Chairman of the Commission testified at a public hearing before a joint legislative committee that "We have, for example, the State of Pennsylvania which is the largest purchaser of liquor in the world. I think they purchase almost $400,000,000 worth of liquor a year—one customer. They swing a very big bit of leverage, and you cannot be convinced that that Pennsylvania customer does not insist on the lowest price that the distiller offers anywhere in the country. . . . [T]he State of Pennsylvania has a contract which permits them to send accountants into any supplier's office— and they do. They send corps of accountants into suppliers' offices to determine whether or not they're getting the best price. And in fact, if they were not, they would have a violation of contract . . . ."

In the monopoly States, of course, no sales to retailers by private wholesalers take place. Thus, brand owners dealing with those States are not placed in the position of vouching for sales to retailers by wholesalers occupying a "related person" status.

the burden of gathering information for the warranties made to the monopoly States may be more onerous than that required for the affirmations under § 9, since the warranties generally cover prices in other States at the very time of sale to the monopoly State, whereas the affirmations filed under § 9 cover prices charged elsewhere during the preceding month.

We therefore conclude that the provisions of § 9 on their face place no unconstitutional burden on interstate commerce.

The appellants' contention that § 9 violates the command of the Supremacy Clause needs no extended discussion. The argument is based upon a claimed inconsistency between § 9 and the federal antitrust laws, specifically the Sherman Act, 26 Stat. 209, as amended, 15 U. S. C. §§ 1–7 (1964 ed.), and § 2 of the Clayton Act, 38 Stat. 730, as amended by the Robinson-Patman Act, 49 Stat. 1526, 15 U. S. C. § 13 (1964 ed.).

In this as in other areas of coincident federal and state regulation, the "teaching of this Court's decisions . . . enjoin[s] seeking out conflicts between state and federal regulation where none clearly exists." *Huron Cement Co.* v. *Detroit,* 362 U. S. 440, 446. We find no such clear conflict in the present case. The bare compilation, without more, of price information on sales to wholesalers and retailers to support the affirmations filed with the State Liquor Authority would not of itself violate the Sherman Act. *Maple Flooring Assn.* v. *United States,* 268 U. S. 563, 582–586; cf. *American Column Co.* v. *United States,* 257 U. S. 377. Section 9 imposes no irresistible economic pressure on the appellants to violate the Sherman Act in order to comply with the requirements of § 9. On the contrary, § 9 appears firmly anchored to the assumption that the Sherman Act will deter any attempts by the appellants to preserve their New York price level by conspiring to raise the prices at which liquor is sold else-

where in the country. Nothing in the Twenty-first Amendment, of course, would prevent enforcement of the Sherman Act against such a conspiracy. *United States* v. *Frankfort Distilleries,* 324 U. S. 293, 299.

Although it is possible to envision circumstances under which price discriminations proscribed by the Robinson-Patman Act might be compelled by § 9, the existence of such potential conflicts is entirely too speculative in the present posture of this case to support the conclusion that New York is foreclosed from regulating liquor prices in the manner it has chosen.[15]  Moreover, § 7 of Chapter 531 has amended the ABC Law by granting to the State Liquor Authority ample discretion to modify the schedule requirements.[16]  We cannot presume that the Authority will not exercise that discretion to alleviate any friction that might result should the ABC Law chafe against the Robinson-Patman Act or any other federal statute.

There remain for consideration the appellants' Fourteenth Amendment claims.  Section 9, they say, violates the Due Process Clause in two respects, first because it imposes an "unreasonable, arbitrary, and capricious" burden upon them, and second because the statutory definition of "related person" is so vague as to be constitutionally intolerable.  And § 9 violates the Equal Protection Clause, they say, because it arbitrarily discriminates among various segments of the liquor industry.

The first contention amounts to a claim of a deprivation of due process of law, based on the argument that

---

[15] Cf. *Wisconsin* v. *Texaco,* 14 Wis. 2d 625, 630–631, 111 N. W. 2d 918, 921; *Safeway Stores* v. *Oklahoma Retail Grocers Assn.,* 360 U. S. 334, 342, n. 7.

[16] Sections 101–b–3 (a) and (b) of the ABC Law, as amended by § 7 of Chapter 531, provide: ". . . Such brand of liquor . . . shall not be sold to wholesalers ["retailers" in § 101–b–3 (b)] except at the price and discounts then in effect unless prior written permission of the authority is granted for good cause shown and for reasons not inconsistent with the purpose of this chapter. . . ."

§ 9 is not designed to promote temperance and that it is an unwise, impractical, and oppressive law. But it is not "the province of courts to draw on their own views as to the morality, legitimacy, and usefulness of a particular business in order to decide whether a statute bears too heavily upon that business and by so doing violates due process. Under the system of government created by our Constitution, it is up to legislatures, not courts, to decide on the wisdom and utility of legislation. There was a time when the Due Process Clause was used by this Court to strike down laws which were thought unreasonable, that is, unwise or incompatible with some particular economic or social philosophy. . . . The doctrine . . . that due process authorizes courts to hold laws unconstitutional when they believe the legislature has acted unwisely . . . has long since been discarded. We have returned to the original constitutional proposition that courts do not substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws. . . ." *Ferguson* v. *Skrupa*, 372 U. S. 726, 728–730.

Moreover, nothing in the Twenty-first Amendment or any other part of the Constitution requires that state laws regulating the liquor business be motivated exclusively by a desire to promote temperance.[17] The announced purpose of the legislature was to eliminate "discrimination against and disadvantage of consumers" in the State.[18] Frustrated by years of unhappy experi-

---

[17] See *State Board of Equalization* v. *Young's Market Co.*, 299 U. S. 59; *Mahoney* v. *Joseph Triner Corp.*, 304 U. S. 401; *Indianapolis Brewing Co.* v. *Liquor Comm'n*, 305 U. S. 391; *Joseph S. Finch & Co.* v. *McKittrick*, 305 U. S. 395; *Ziffrin, Inc.* v. *Reeves*, 308 U. S. 132; *California* v. *Washington*, 358 U. S. 64.

[18] The intent of the legislature in enacting § 9 is expressed in § 8 of Chapter 531:

". . . In order to forestall possible monopolistic and anti-competitive practices designed to frustrate the elimination of . . . discrimination

ence with a state-enforced mandatory resale price maintenance system that placed exclusive price-fixing power in the hands of the distillers, the legislature adopted § 9 as the core of the liquor price reform contemplated by Chapter 531. We cannot say that the legislature acted unconstitutionally when it determined that only by imposing the relatively drastic "no higher than the lowest price" requirement of § 9 could the grip of the liquor distillers on New York liquor prices be loosened.[19] In a variety of cases in areas no more sensitive than that of liquor control, this Court has upheld state maximum price legislation. See *Nebbia* v. *New York*, 291 U. S. 502; *Townsend* v. *Yeomans*, 301 U. S. 441; *O'Gorman & Young* v. *Hartford Fire Ins. Co.*, 282 U. S. 251; *Gold* v. *DiCarlo*, 380 U. S. 520.

The statutory definition of "related person," which the appellants attack as unconstitutionally vague, includes any person "the exclusive, principal or substantial business of which is the sale of a brand or brands of liquor purchased from such brand owner or wholesaler designated as agent . . . ." The claim of vagueness is cen-

---

and disadvantage [to consumers], it is hereby further declared that the sale of liquor should be subjected to certain further restrictions, prohibitions and regulations, and the necessity for the enactment of the provisions of section nine of this act is, therefore, declared as a matter of legislative determination."

The preceding portion of § 8 states the intent of the legislature in enacting § 11 of Chapter 531, which repealed § 101–c, the mandatory resale price maintenance provision. See Appendix, *infra*, p. 54.

[19] We also find without merit the appellants' objection that the price computation provision, § 101–b–3 (i), sweeps too broadly. That provision was intended to circumvent the established industry practice of interpreting "price" as "invoice price" rather than the amount actually realized by the seller on the transaction. There *is no indication in the record that* § 101–b–3 (i) *as applied will* require the reflection in New York of every idiosyncratic price fluctuation elsewhere in the United States that happens to produce a "lowest price."

tered upon the term "principal or substantial." We cannot agree that that language is so vague as to be constitutionally invalid. The Deputy Commissioner of the State Liquor Authority testified in these proceedings that where the determination of "related persons" is unclear, the appellants will have access to the Authority for a ruling to clarify the issue.[20]  As the Court said in *Board of Governors* v. *Agnew*, 329 U. S. 441, 449, ". . . we think it plain under our decisions that if substantiality is the statutory guide, the limits of administrative action are sufficiently definite or ascertainable so as to survive challenge on the grounds of unconstitutionality."  Cf. *Opp Cotton Mills* v. *Administrator*, 312 U. S. 126, 142–146; *Bowles* v. *Willingham*, 321 U. S. 503, 512–516.

Further, as the record indicates, the structure of the liquor industry is such that even the largest national distillers deal through a relatively limited number of wholesalers.[21]  Frequently, a wholesaler agrees with a distiller not to sell brands of competing distillers in the same price range, and the prices charged by these wholesalers are potentially subject to the influence of the distillers.[22]  We cannot say, therefore, that § 9 on its face imposes an unconstitutional burden on distillers or wholesalers in ascertaining the wholesalers who satisfy the

---

[20] Section 101–b–4 of the ABC Law authorizes the State Liquor Authority to promulgate rules to carry out the purpose of § 101–b.

[21] The vice-president of Joseph E. Seagram & Sons, Inc., one of the largest national distillers, testified that "Of the 330 wholesalers selling Seagram throughout the country, sixteen do 75 per cent or more of their business in the sale of our brands. Sixty-one do approximately 60 to 75 per cent in the sale of these brands; seventy-three do 40 to 60 per cent; seventy-nine, 20 to 40 per cent; sixty-four, 5 to 20 per cent; thirty-seven, 1 to 5 per cent."

[22] See Borregard & Glusker, The Distilled Spirits Industry: A Marketing Survey 65–104, 133–163 (Yale Law School 1950); Oxenfeldt, "Whisky Prices," Industrial Pricing and Market Practices 445, 477, 483–486 (1951).

"related person" criterion or in obtaining information on prices charged by such wholesalers.

We come, then, to the appellants' argument that § 9 violates the Equal Protection Clause. That argument is based upon the claim that it was arbitrary for the legislature to except consumer sales and private label brands of liquor from the "no higher than the lowest price" requirement of § 9, and to reduce the scope of the price affirmation required with respect to sales made to wholesalers and retailers by those who are not "related persons."

We do not find that these differentiations constitute invidious discrimination. The legislature could reasonably have believed that, once the prices on sales by distillers and "related persons" were reduced, the prices of private label brands and brands sold by non-"related persons" would follow suit. Nor was it necessary for the legislature to impose the "no higher than the lowest price" requirement on sales by retailers to consumers. The legislature might reasonably have concluded that consumer prices would adequately reflect the reductions in prices to wholesalers and retailers accomplished by § 9, even though the state fair trade statute, which permits private resale price maintenance agreements on sales to consumers, appears to have emerged unscathed by the enactment of Chapter 531.[23] "A statute is not invalid under the Constitution because it might have gone farther than it did, or because it may not succeed in bringing about the result that it tends to produce." *Roschen* v.

---

[23] The New York fair trade statute is the Feld-Crawford Act, Laws 1940, c. 195, § 3, as amended, General Business Law, §§ 369-a–e. See *National Distillers Corp.* v. *Seyopp Corp.*, 17 N. Y. 2d 12, 214 N. E. 2d 361; *National Distillers Corp.* v. *R. H. Macy & Co.*, 23 App. Div. 2d 51, 258 N. Y. S. 2d 298; *Fleischmann Distilling Corp.* v. *R. H. Macy & Co.*, 24 App. Div. 2d 977, 265 N. Y. S. 2d 384; *Victor Fischel & Co.* v. *R. H. Macy & Co.*, N. Y. Sup. Ct., 154 N. Y. L. J. No. 95, p. 17 (Nov. 17, 1965).

*Ward,* 279 U. S. 337, 339. "[T]he reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." *Williamson* v. *Lee Optical Co.,* 348 U. S. 483, 489.

Although the appellants' primary attack is upon the constitutionality of § 9, they also challenge two minor provisions added by § 7 of Chapter 531 to the schedule requirements of the ABC Law. The first provision, which requires the price schedules to cover sales to wholesalers "irrespective of the place of sale or delivery," is designed to bring wholesalers within the price-publicity requirement of the law, even though they take delivery of the liquor outside New York for distribution within the State. The second provision, which requires the price schedules on sales to both wholesalers and retailers to include "the net bottle and case price paid by the seller," tends to promote publicity of the seller's profit margins.[24] There is no indication in the present record that the State Liquor Authority will require the appellants to file schedules of prices on sales unrelated to the distribution of liquor in New York. As the Court of Appeals observed with regard to these provisions, "The statute is concerned with New York practices and, if the sales in other States have no relevancy to New York enforcement, the statute permits the Liquor Authority for good cause to waive the general prohibition against sales to wholesalers in the absence of such schedules. It would be reasonable to expect that the statute would be administered consistently with its sole purpose to regulate the intrastate sale of liquor." 16 N. Y. 2d 47, 59; 209 N. E. 2d 701, 706. We accept this construction of the statute by New York's highest court. *N. A. A. C. P.* v. *Button,* 371

---

[24] Where the manufacturer is also the seller, this provision is inapplicable. See Alcoholic Beverage Control Law, Appendix, Rule 16 of the State Liquor Authority, § 65.6 (b)(3) (1965 Supp.), 9 NYCRR 65.6 (b)(3).

U. S. 415, 432. As so construed, these provisions serve a clear and legitimate interest of New York in the exercise of its constitutional power to regulate the sale of liquor within its borders.

For the reasons that we have stated, we find no constitutional infirmity in any of the 1964 amendments to the New York ABC Law challenged on this appeal. Although it is possible that specific future applications of Chapter 531 may engender concrete problems of constitutional dimension, it will be time enough to consider any such problems when they arise. We deal here only with the statute on its face. And we hold that, so considered, the legislation is constitutionally valid. Accordingly, the judgment of the New York Court of Appeals is

*Affirmed.*

### APPENDIX TO OPINION OF THE COURT.

Chapter 531, 1964 Session Laws of New York.

.　　.　　.　　.　　.

§ 7. Section one hundred one-b of such law, as added by chapter eight hundred ninety-nine of the laws of nineteen hundred forty-two, subdivision four thereof having been amended by chapter five hundred fifty-one of the laws of nineteen hundred forty-eight, is hereby amended to read as follows:

§ 101–b. *Unlawful discriminations prohibited; filing of schedules; schedule listing fund*

.　　.　　.　　.　　.

3. (a) No brand of liquor or wine shall be sold to or purchased by a wholesaler, irrespective of the place of sale or delivery, unless a schedule, as provided by this section, is filed with the liquor authority, and is then in effect. Such schedule shall be in writing duly verified, and filed in the number of copies and form as required by the authority, and shall contain, with respect to each item,

the exact brand or trade name, capacity of package, nature of contents, age and proof where stated on the label, the number of bottles contained in each case, the bottle and case price to wholesalers, the net bottle and case price paid by the seller, which prices, in each instance, shall be individual for each item and not in "combination" with any other item, the discounts for quantity, if any, and the discounts for time of payment, if any. Such brand of liquor or wine shall not be sold to wholesalers except at the price and discounts then in effect unless prior written permission of the authority is granted for good cause shown and for reasons not inconsistent with the purpose of this chapter. Such schedule shall be filed by (1) the owner of such brand, or (2) a wholesaler selling such brand and who is designated as agent for the purpose of filing such schedule if the owner of the brand is not licensed by the authority, or (3) with the approval of the authority, by a wholesaler, in the event that the owner of the brand is unable to file a schedule or designate an agent for such purpose.

(b) No brand of liquor or wine shall be sold to or purchased by a retailer unless a schedule, as provided by this section, is filed with the liquor authority, and is then in effect. Such schedule shall be in writing duly verified, and filed in the number of copies and form as required by the authority, and shall contain, with respect to each item, the exact brand or trade name, capacity of package, nature of contents, age and proof where stated on the label, the number of bottles contained in each case, the bottle and case price to retailers, the net bottle and case price paid by the seller, which prices, in each instance, shall be individual for each item and not in "combination" with any other item, the discounts for quantity, if any, and the discounts for time of payment, if any. Such brand of liquor or wine shall not be sold to retailers except at the price and discounts then in effect unless prior

written permission of the authority is granted for good cause shown and for reasons not inconsistent with the purpose of this chapter. Such schedule shall be filed by each manufacturer selling such brand to retailers and by each wholesaler selling such brand to retailers.

(c) Provided however, nothing contained in this section shall require any manufacturer or wholesaler to list in any schedule to be filed pursuant to this section any item offered for sale to a retailer under a brand which is owned exclusively by one retailer and sold at retail within the state exclusively by such retailer.

. . . . .

§ 8. In enacting section eleven of this act, it is the firm intention of the legislature (a) that fundamental principles of price competition should prevail in the manufacture, sale and distribution of liquor in this state, (b) that consumers of alcoholic beverages in this state should not be discriminated against or disadvantaged by paying unjustifiably higher prices for brands of liquor than are paid by consumers in other states, and that price discrimination and favoritism are contrary to the best interests and welfare of the people of this state, and (c) that enactment of section eleven of this act will provide a basis for eliminating such discrimination against and disadvantage of consumers in this state. In order to forestall possible monopolistic and anti-competitive practices designed to frustrate the elimination of such discrimination and disadvantage, it is hereby further declared that the sale of liquor should be subjected to certain further restrictions, prohibitions and regulations, and the necessity for the enactment of the provisions of section nine of this act is, therefore, declared as a matter of legislative determination.

§ 9. Subdivision three of section one hundred one–b of such law, as amended by section seven of this act, is

hereby amended to add eight new paragraphs, to be paragraphs (d), (e), (f), (g), (h), (i), (j) and (k), to read as follows:

(d) There shall be filed in connection with and when filed shall be deemed part of the schedule filed for a brand of liquor pursuant to paragraph (a) of this subdivision an affirmation duly verified by the owner of such brand of liquor, or by the wholesaler designated as agent for the purpose of filing such schedule if the owner of the brand of liquor is not licensed by the authority, that the bottle and case price of liquor to wholesalers set forth in such schedule is no higher than the lowest price at which such item of liquor was sold by such brand owner or such wholesaler designated as agent, or any related person, to any wholesaler anywhere in any other state of the United States or in the District of Columbia, or to any state (or state agency) which owns and operates retail liquor stores, at any time during the calendar month immediately preceding the month in which such schedule is filed. As used in this paragraph (d), the term "related person" shall mean any person (1) in the business of which such brand owner or wholesaler designated as agent has an interest, direct or indirect, by stock or other security ownership, as lender or lienor, or by interlocking directors or officers, or (2) the exclusive, principal or substantial business of which is the sale of a brand or brands of liquor purchased from such brand owner or wholesaler designated as agent, or (3) which has an exclusive franchise or contract to sell such brand or brands.

(e) There shall be filed in connection with and when filed shall be deemed part of any other schedule filed for a brand of liquor pursuant to paragraph (a) of this subdivision an affirmation duly verified by the person filing such schedule that the bottle and case price of liquor to wholesalers set forth in such schedule is no higher than

the lowest price at which such item of liquor was sold by such person to any wholesaler anywhere in any other state of the United States or in the District of Columbia, or to any state (or state agency). which owns and operates retail liquor stores, at any time during the calendar month immediately preceding the month in which such schedule is filed.

(f) There shall be filed in connection with and when filed shall be deemed part of any schedule filed for a brand of liquor pursuant to paragraph (b) of this subdivision by the owner of such brand of liquor, or by the wholesaler designated as agent for the purpose of filing such schedule if the owner of the brand of liquor is not licensed by the authority, or by a related person, an affirmation duly verified by such brand owner or such wholesaler designated as agent that the bottle and case price of liquor to retailers set forth in such schedule is no higher than the lowest price at which such item of liquor was sold by such brand owner of [sic] such wholesaler designated as agent, or any related person, to any retailer anywhere in any other state of the United States or in the District of Columbia, other than to any state (or state agency) which owns and operates retail liquor stores, at any time during the calendar month immediately preceding the month in which such schedule is filed. As used in this paragraph (f), the term "related person" shall mean any person (1) in the business of which such brand owner or wholesaler designated as agent has an interest, direct or indirect, by stock or other security ownership, as lender or lienor, or by interlocking directors or officers, or (2) the exclusive, principal or substantial business of which is the sale of a brand or brands of liquor purchased from such brand owner or wholesaler designated as agent, or (3) who has an exclusive franchise or contract to sell such brand or brands.

(g) There shall be filed in connection with and when filed shall be deemed part of any other schedule filed for a brand of liquor pursuant to paragraph (b) of this subdivision an affirmation duly verified by the person filing such schedule that the bottle and case price of liquor to retailers set forth in such schedule is no higher than the lowest price at which such item of liquor was sold by such person to any retailer anywhere in any other state of the United States or in the District of Columbia, other than to any state (or state agency) which owns and operates retail liquor stores, at any time during the calendar month preceding the month in which such schedule is filed.

(h) In the event an affirmation with respect to any item of liquor is not filed within the time provided by this section, any schedule for which such affirmation is required shall be deemed invalid with respect to such item of liquor, and no such item may be sold to or purchased by any wholesaler or retailer during the period covered by any such schedule.

(i) In determining the lowest price for which any item of liquor was sold in any other state or in the District of Columbia, or to any state (or state agency) which owns and operates retail liquor stores, appropriate reductions shall be made to reflect all discounts in excess of those to be in effect under such schedule, and all rebates, free goods, allowances and other inducements of any kind whatsoever offered or given to any such wholesaler, state (or state agency) or retailer, as the case may be, purchasing such item in such other state or in the District of Columbia; provided that nothing contained in paragraphs (d), (e), (f) and (g) of this subdivision shall prevent differentials in price which make only due allowance for differences in state taxes and fees, and in the actual cost of delivery. As used in this paragraph, the term "state taxes or fees" shall mean the excise taxes

imposed or the fees required by any state or the District of Columbia upon or based upon the gallon of liquor, and the term "gallon" shall mean one hundred twenty-eight fluid ounces.

(j) Notwithstanding and in lieu of any other penalty provided in any other provisions of this chapter, any person who makes a false statement in any affirmation made and filed pursuant to paragraph (d), (e), (f) or (g) of this subdivision shall be guilty of a misdemeanor, and upon conviction thereof shall be punishable by a fine of not more than ten thousand dollars or by imprisonment in a county jail or penitentiary for a term of not more than six months or by both such fine and imprisonment. Every affirmation made and filed pursuant to paragraph (d), (e), (f) or (g) of this subdivision shall be deemed to have been made in every county in this state in which the brand of liquor is offered for sale under the terms of said schedule. The attorney general or any district attorney may prosecute any person charged with the commission of a violation of this paragraph. In any such prosecution by the attorney general, he may appear in person or by his deputy or assistant before any court or any grand jury and exercise all the powers and perform all the duties in respect of any such proceeding which the district attorney would otherwise be authorized or required to exercise or perform, and in such prosecution the district attorney shall only exercise such powers and perform such duties as are required of him by the attorney general or his deputy or assistant so attending.

(k) Upon final judgment of conviction of any person after appeal, or in the event no appeal is taken, upon the expiration of the time during which an appeal could have been taken, the liquor authority may refuse to accept for any period of months not exceeding three calendar months any affirmation required to be filed by such person.