**FAIRFIELD COUNTY BEVERAGE DIS-
TRIBUTORS, INC., Plaintiff,**

v.

**NARRAGANSETT BREWING COM-
PANY, Defendant.**

Civ. No. B–87.

United States District Court,
D. Connecticut.

July 19, 1974.

Thomas E. Minogue, Jr., Joel E. Kan-
ter, Bridgeport, Conn., for plaintiff.

David M. Reilly, Jr., Reilly, Peck, Raf-
file & Lasala, New Haven, Conn., for de-
fendant.

LUMBARD, Circuit Judge:*

This is a private action for treble
damages under the antitrust laws.
Plaintiff Fairfield County Beverages
Distributors, Inc. (Fairfield) is a whole-
sale distributor of soft drinks and beer
to retail outlets in Connecticut. From
June 1966 to December 1968 Fairfield
was the wholesale distributor in certain
parts of Fairfield County of the beer
products manufactured by defendant
Narragansett Brewing Company (Nar-

* Sitting by designation.

ragansett). Narragansett is a brewer of several brands of beer and is located in Cranston, Rhode Island.

Fairfield claims that territorial restrictions placed on its distribution of Narragansett products during the period in which it was a distributor of them violated Section 1 of the Sherman Act, 15 U.S.C. § 1. By agreement of the parties a bench trial concerned solely with the question of defendant's liability under the Sherman Act was held on May 8, 1974.

Fairfield has been in the wholesale distribution of soft drinks and beer since 1953. In the spring of 1966 Fairfield was distributing soft drinks throughout the Fairfield County area and was distributing certain private label beers to chain stores throughout Connecticut. Under the applicable Connecticut liquor laws and regulations Narragansett was an out-of-state shipper which could only sell its product to a licensed manufacturer or wholesaler in the State of Connecticut. Section 30–6–B7 of the Connecticut liquor regulations then in effect provided for the appointment of such distributors of an out-of-state shipper's products:

> Each manufacturer and out-of-state shipper permittee shall file with the [liquor control] commission a list of his authorized distributors, setting forth the brands and also the exact geographical area in which the distributor or wholesaler shall be authorized to sell, and shall also file a certificate from the wholesaler to the effect that he is, in fact, servicing the area designated and no other area for the brand or brands for which he has been appointed as distributor. No change on the list of authorized distributors or wholesalers of a manufacturer or out-of-state shipper shall be made except after ninety days' notice by registered mail to all such authorized distributors or wholesalers affected by such change which appear on the list of the particular manufacturer or out-of-state shipper as recorded in the office of the liquor control commission, and except after ninety days' like notice to and approval by the liquor control commission. Such changes may be made without waiting the ninety days with approval of the commission where waivers are executed by the distributors or wholesalers concerned, or where the geographical area of distribution has not been already allocated to a distributor or wholesaler, or after a hearing has been held, upon presentation of sufficient evidence of any violation of the liquor control act or regulations of the commission, or evidence of any other act detrimental to the orderly conduct of the business, in which a present authorized distributor or wholesaler has been involved. The notice of change shall indicate that the name of the permittee is to be an additional distributor or wholesaler or, in the case of eliminating the name of a present distributor or wholesaler, with or without substituting another permittee's name, the notice of change shall so indicate an "elimination" or "substitution." Geographical areas of distribution shall be submitted either by townships or counties or statewide, and any change in geographical area of distribution shall fully conform to the same essential conditions as required in the notice of change to distributors or wholesalers.

The evidence at trial indicated that with the exception of private label brands sold to chain stores the liquor control commission required that a wholesaler be prepared to supply all the retailers within his geographic area with the brands he distributed. There were also additional state regulations which provided for the setting of minimum consumer prices below which intoxicating beverages could not be sold, as well as a system of posting uniform prices on liquor sold by wholesalers to retailers.

In the spring of 1966 Fairfield and Narragansett discussed the possibility of plaintiff's becoming defendant's distributor in the Fairfield County area. At this time the towns of Stratford and

Milford were serviced by the Hannon Distributors Company. Three other distributors handled most of the rest of Fairfield County. One distributed Narragansett and Krueger beer throughout this area, while the other two distributed Haffenreffer beer, another Narragansett brand, in separate, non-overlapping territories. Narragansett decided to give Fairfield an exclusive distributorship in the area served by the three other distributors for the Narragansett, the Krueger, and the Haffenreffer brands.[1] Hannon Distributors was to continue to service Milford and Stratford. The requisite waivers were obtained from the other three distributors and in June 1966 Fairfield was appointed a distributor for Narragansett.

Fairfield served as a distributor for Narragansett for two and a half years. Fairfield's president, Jack Greengarden, testified that several times during this period he requested that Narragansett expand his territory to include an exclusive distributorship in Milford and Stratford and the right to distribute Narragansett products to the supermarket chains Fairfield serviced throughout Connecticut. Narragansett never agreed to expand Fairfield's area. Instead, Narragansett's representative, Dominic DiFolco, made it very clear that Fairfield was not to sell outside the territory that it had been given. On two occasions when Fairfield sold Narragansett beer to stores considered to be in Stratford, DiFolco said that these sales must not be repeated.

Narragansett terminated Fairfield's distributorship in December 1968. Originally the second count of the complaint in this case alleged that the termination had been caused by Fairfield's efforts to sell a competitor's products. This count, however, has been dismissed by agreement of the parties. In fact, the evidence brought out at trial indicates that Fairfield was terminated for other reasons, among them the selling to several taverns draft beer that had gone bad due to inadequate refrigeration by Fairfield.

Fairfield argues that Narragansett's efforts to restrict the area in which it could sell Narragansett's products constitutes a per se violation of Section 1 of the Sherman Act. It bases this argument on United States v. Arnold, Schwinn & Co., 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967), where the Supreme Court said: "As the District Court held, where a manufacturer *sells* products to his distributor subject to territorial restrictions upon resale, a *per se* violation of the Sherman Act results." 388 U.S. at 379, 87 S.Ct. at 1865 (emphasis original). Fairfield argues that although Connecticut requires that a territory of a wholesaler be filed with the liquor control commission, it does not require that the area be limited in scope to only one part of the state nor does it require that the territory be an exclusive one. Fairfield argues that it was Narragansett, not Connecticut, that chose to limit Fairfield's area to only part of Fairfield County. Fairfield argues that it could have been appointed an additional distributor for the whole State of Connecticut.

■ It is clear that *Schwinn* requires that the plaintiff must prevail unless Connecticut's liquor regulations either limit the scope of the *Schwinn* rule or the Sherman Act itself. The beer here was sold to Fairfield; indeed Connecticut liquor regulations forbade consignment arrangements. Beer is subject to the *Schwinn* per se rule even though it is perishable. Adolph Coors Co. v. FTC, 497 F.2d 1178 (10th Cir. 1974), BNA Antitrust & Trade Reg. Rep., June 11, 1974, at D–1. Narragansett clearly tried to enforce these territorial restrictions, so the requirement of Janel Sales Corp. v. Lanvin Parfums, Inc., 396 F.2d 398, 406–407 (2d Cir.), cert. denied, 393 U.S. 938, 89 S.Ct. 303, 21 L.Ed.2d 275 (1968), has been met.

---

1. In particular, Fairfield was to service one area consisting of the townships of Greenwich, Stamford, New Canaan, Wilton, Weston, Easton, Monroe, Trumbull, Darien, Norwalk, Westport, Fairfield, and Bridgeport.

Finally, the fact that Fairfield benefited from exclusive territories, while possibly relevant to the question of damages, is irrelevant to the question of liability since *in pari delicto* is no defense in antitrust cases. Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968).

Section 2 of the Twenty-first Amendment provides: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." The Supreme Court has made it "clear in the early years following adoption of, the Twenty-first Amendment that by virtue of its provisions a State is totally unconfined by traditional Commerce Clause limitations when it restricts the importation of intoxicants destined for use, distribution, or consumption within its borders." Hostetter v. Idlewild Bon Voyage Liquor Corp., 377 U.S. 324, 330, 84 S.Ct. 1293, 1296, 12 L.Ed.2d 350 (1964). *See, e. g.*, Joseph E. Seagram & Sons, Inc. v. Hostetter, 384 U.S. 35, 86 S.Ct. 1254, 16 L.Ed.2d 336 (1966); State Board of Equalization v. Young's Market Co., 299 U.S. 59, 57 S.Ct. 77, 81 L.Ed. 38 (1936); *cf.* California v. La Rue, 409 U.S. 109, 93 S.Ct. 390, 34 L. Ed.2d 342 (1972). Therefore, Connecticut's regulations concerning the distribution of Narragansett's products are valid.

While the wisdom of per se rules concerning territorial restrictions of distribution has been extensively discussed, *see, e. g.*, Bork, The Rule of Reason and the Per Se Concept: Price Fixing and Market Division (pt. 2), 75 Yale L.J. 375 (1966); Comanor, Vertical Territorial and Customer Restrictions: White Motor and Its Aftermath, 81 Harv.L. Rev. 1419 (1968); Note, Territorial Restrictions and Per Se Rules—A Re-evaluation of the Schwinn and Sealy Doctrines, 70 Mich.L.Rev. 616 (1972), the Supreme Court has given no indication of any retreat from per se rules in this area, see United States v. Topco Associates, Inc., 405 U.S. 596, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972). But this does not mean that every territorial restriction on distribution when a product is sold necessarily violates a *Schwinn* per se rule. The Third Circuit in Tripoli Co. v. Wella Corp., 425 F.2d 932 (3d Cir.), cert. denied, 400 U.S. 831, 91 S.Ct. 62, 27 L.Ed.2d 62 (1970), concluded that restrictions on resale were not per se illegal when justified by considerations of safety.

Here Connecticut has imposed many restrictions on intraband competition between the distributors of a single brand of beer. There are minimum consumer prices and uniform prices on beer sold to retailers that must be followed. The record does not indicate precisely how these prices are set nor what degree of price competition remains in Connecticut between the various distributors and retailers of Narragansett beer, but it is fair to say that price competition may be sharply curtailed. Connecticut has made any change in territories burdensome in procedure by requiring a ninety-day waiting period and notice to affected distributors, thus restricting the more rapid changes in territories served by distributors that would occur without these procedures. Furthermore, Connecticut has also required that a distributor be willing to serve every retailer in its area. Thus if Fairfield's area had been the whole state of Connecticut, it would have had to service every retailer in the state, no matter how small, not just the large chain stores, as it wished to do. It can be maintained that these regulations so restrict intraband competition, the promotion of which is the major economic justification of the *Schwinn* rule, that the *Schwinn* rule should no longer apply. It would then be incumbent upon Fairfield to show that Narragansett unreasonably restrained trade, which it has failed to do. However, this matter need not be decided since the court concludes that Con-

necticut's regulations have placed Narragansett's conduct altogether beyond the pale of the Sherman Act.

■■ The Sherman Act applies in cases in which its applicability would not defeat the state's liquor policy. United States v. Frankfort Distilleries, Inc., 324 U.S. 293, 65 S.Ct. 661, 89 L.Ed. 951 (1945); United States v. Connecticut Package Stores Association, Inc., 205 F.Supp. 789 (D.Conn.1962) (Blumenfeld, J.). Here, however, Connecticut has permissively allowed, and apparently encouraged, Narragansett to set up territories of less than the whole state beyond which a distributor cannot sell. Connecticut has also permitted Narragansett to set up exclusive distributorships within these restricted territories. The most extensive discussion in the Supreme Court of the interrelationship between the Sherman Act and the Twenty-first Amendment is Mr. Justice Frankfurter's concurring opinion in *Frankfort Distilleries*. He said there that the Twenty-first Amendment freed a state from the strictures of the Commerce Clause in regulating the traffic of liquor within its borders, but the operation of the Commerce Clause continued if the state chose not to exercise its powers under the Twenty-first Amendment. The Sherman Act, which derives its authority from the Commerce Clause, has no greater scope than the Commerce Clause itself. The problem then in cases like this is to determine whether the policy of the state sanctions the arrangement alleged to violate the Sherman Act. "Such a policy may be expressed either formally by legislation or by implied permission." 324 U.S. at 301, 65 S.Ct. at 666.

■ At the very least, Connecticut's regulations must be considered to be "implied permission" for Narragansett's actions. Those actions are therefore immune from the prohibitions of the Sherman Act. Judge McLaren has reached the same conclusion concerning an identical claim under a similar Illinois statute. J. W. T., Inc. v. Kobrand Corp.,

1973–2 Trade Cas. ¶ 74,726 (N.D.Ill. 1973).

Accordingly, judgment will be entered for defendant Narragansett Brewing Company. This opinion constitutes the court's findings of fact and conclusions of law, Fed.R.Civ.P. 52(a).

So ordered.