### DAKOTA WHOLESALE LIQUOR, INC., Plaintiff,

v.

### STATE OF MINNESOTA, Edward Novak, Commissioner of Public Safety For the State of Minnesota, Glenmore Distilleries Company, Heublein, Inc., and Calvert Distillers Company, Division of Joseph E. Seagram & Sons, Inc., Defendants.

No. 3–78 Civ. 196.

United States District Court,
D. Minnesota,
Third Division.

May 30, 1978.

Robert R. Weinstine, Oppenheimer, Wolff, Foster, Shepard & Donnelly, St. Paul, Minn., for plaintiff.

Warren Spannaus, Atty. Gen., Richard A. Lockridge, Sp. Asst. Atty. Gen., St. Paul, Minn., for defendant State of Minnesota.

Barry G. Reed, Robins, Davis & Lyons, Minneapolis, Minn., for defendant Glenmore Distilleries Co.

Lawrence J. Hayes, Maun, Hazel, Green, Hayes, Simon & Aretz, St. Paul, Minn., for defendant Heublein, Inc.

Macdonald Flinn, White & Case, New York City, for defendant Joseph E. Seagram & Sons.

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

DEVITT, Chief Judge.

Plaintiff moves for a preliminary injunction which would stay the effective date of a recently enacted Minnesota statute and would require defendants, other than the State of Minnesota, to sell their products to plaintiff pending trial on the merits. Plaintiff's motion is denied.

Plaintiff is a South Dakota corporation licensed in South Dakota and Minnesota as a wholesaler of alcoholic beverages. Defendants, other than the State of Minnesota, are manufacturers of alcoholic beverages. Plaintiff has engaged in an ingenious system of obtaining and marketing alcohol. Because of Minnesota's "non-discrimination" statute with regard to alcoholic beverages, plaintiff through its Minnesota wholesaler's license can obtain any and all brands of alcohol that it wishes. Plaintiff then "transships" much of this alcohol to South Dakota for resale to South Dakota retailers, thus circumventing the exclusive distributorship liquor distribution system in effect in South Dakota and at least tacitly approved by the South Dakota legislature. Two snags have developed in plaintiff's system, however, and they have resulted in this litigation.

The defendant manufacturers, because of the actual and potential disruptive effect plaintiff's plan has on their marketing operations in states with exclusive distributorship systems, have refused to sell liquor to plaintiff as a Minnesota wholesaler if plaintiff intends to transship the liquor out of Minnesota. Defendants have all represented, however, that they will continue to sell to plaintiff for resale in Minnesota. Plaintiff asserts that this refusal to sell was taken by defendants in concert, thus resulting in a group boycott in violation of § 1 of the Sherman Act.

The second snag plaintiff has encountered concerns the Act of March 28, 1978, ch. 687, § 3, 1978 Minn.Sess. Law Serv. (West) 451. This recent law, in effect, forbids Minnesota wholesalers from using their Minnesota license to obtain alcohol for consumption outside of Minnesota without the permission of the manufacturer. The only significant attack on this statute by plaintiff is on grounds that it violates the Commerce Clause.

In the voluminous briefs submitted by counsel, much space is devoted to a discussion of the alternative standards for preliminary injunctions expressed in *Fennell v. Butler*, 570 F.2d 263 (8th Cir. 1978). Assuming the ultimate validity of these alternative tests in the Eighth Circuit, they both nonetheless require an analysis of the strength of plaintiff's claim and the harm plaintiff will suffer vis-a-vis the defendants if preliminary relief is denied. Balancing these considerations, the court is convinced that a case is not made for preliminary relief regardless of which test is utilized.

Plaintiff's assertion that preliminary relief is called for because of the alleged unconstitutionality of the recent Minnesota legislation lacks merit. First, the statute does not go into effect until August 1, 1978, and therefore any irreparable harm suffered prior to that date should not be great. More important, plaintiff's claim that the statute violates the Commerce Clause appears doubtful. The United States Supreme Court has held on numerous occasions that where liquor is destined for use, distribution, or consumption within

the state, "the Twenty-first Amendment demands wide latitude for regulation by the State." *E. g., Joseph E. Seagram & Sons v. Hostetter*, 384 U.S. 35, 42, 86 S.Ct. 1254, 1259, 16 L.Ed.2d 336 (1966). As a result, "a State is totally unconfined by traditional Commerce Clause limitations when it restricts the importation of intoxicants destined for use, distribution, or consumption within its borders." *Hostetter v. Idlewild Bon Voyage Liquor Corp.*, 377 U.S. 324, 330, 84 S.Ct. 1293, 1297, 12 L.Ed.2d 350 (1964). In the present case the Minnesota legislature has placed what appears to be reasonable restrictions upon plaintiff's Minnesota liquor wholesaler license, which it has the power to do under the Twenty-first Amendment as interpreted by the Supreme Court, even if the restrictions result in a wholesaler being unable to use its Minnesota license to export alcohol from Minnesota. *See Ziffrin, Inc. v. Reeves*, 308 U.S. 132, 60 S.Ct. 163, 84 L.Ed. 128 (1939). Thus, the injury plaintiff will suffer if the effective date of the statute is not stayed at this time is minimal and speculative, and the merits of plaintiff's claim with regard to the constitutionality of the Minnesota statute are not sufficiently "serious" to make them "a fair ground for litigation." *Fennell v. Butler, supra*, at 264.

 The antitrust claims against defendants other than the State of Minnesota also are not sufficient to merit preliminary relief. The allegations of a combination, conspiracy, or agreement among the defendants to boycott plaintiff are purely speculative and are emphatically and uncategorically denied by defendants. Moreover, affidavits submitted by defendants indicate plaintiff's sales have risen markedly in recent months, thus indicating plaintiff will not suffer irreparable harm, especially if defendants continue to sell to plaintiff for resale in Minnesota as they have represented they will do. Finally, because the recent Minnesota statute discussed above will go into effect in two months, any harm suffered between now and then if defendants are violating the Sherman Act can be adequately compensated by monetary relief. This is so because the statute, assuming its constitutionality, will cause plaintiff's distribution system in South Dakota to come to a halt in two months regardless of any Sherman Act violations by defendant manufacturers. Therefore, even if defendants have violated the Sherman Act, and there is little to indicate they have, any loss resulting from those violations between now and August 1 can be compensated through money damages.

Plaintiff's request for a preliminary injunction is DENIED.