**Jack R. BATTIPAGLIA and Bacchus Selections, Inc., Plaintiffs,**

v.

**NEW YORK STATE LIQUOR AUTHORITY, Defendant.**

**No. 80 Civ. 5701.**

United States District Court, S.D. New York.

Sept. 27, 1982.

Mehler & Buscemi, New York City, for plaintiffs; Martin P. Mehler, New York City, of counsel.

Robert Abrams, Atty. Gen., State of N.Y., New York City, for defendant; August L. Fietkau, Asst. Atty. Gen., New York City, of counsel.

OPINION AND ORDER

OWEN, District Judge.

The plaintiffs are an owner of a retail package store and a wholesaler of wines. Defendant is the New York State Liquor Authority ("SLA"), charged by the New York state legislature with intrastate regulation and administration of the alcoholic beverage industry. Plaintiffs allege that

Section 101–b of the New York State Alcoholic Beverage Control Law (the "ABC" Law) conflicts with Section 1 of the Sherman Act, 15 U.S.C. § 1, and is thereby constitutionally invalid pursuant to the Supremacy Clause. U.S. Const. Art. VI. By the instant motion, plaintiffs seek summary judgment. Because I find no conflict between the challenged statute and the federal antitrust laws, plaintiff's motion is denied.

The attacked section, Section 101–b, requires that manufacturers and wholesalers of wine and liquor file monthly with the SLA a schedule which includes the price at which their product will be offered to purchasers and a statement that such offerings will be made either at the posted price or at a discount of no more than an amount set by the statute. It further allows competing manufacturers, wholesalers, and the public to review the prices once posted and within three days of such review allows wholesalers to adjust their prices downward—but not upward—in order to meet competition. The purpose of the regulatory structure is to prevent unfair and unreasonable price discrimination to the benefit of favored buyers resulting in a disorderly market.

Plaintiffs claim, however, that these provisions have resulted in injurious anticompetitive effects insofar as they are burdening trade between wholesalers and retailers, effectively eliminating price competition among wholesalers, and creating a market where all wholesalers offer their identical products to retailers at identical prices. As a consequence of the identity of prices at the wholesale level, plaintiffs conclude, competition at the retail level has been impaired. This is impermissible, plaintiffs urge, claiming that Section 1 of the Sherman Act pre-empts Section 101–b of the ABC Law. They cite in support *California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.*, 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980).

Plaintiffs motion raises three issues of law. First, does the regulatory scheme mandated by Section 101–b 3 conflict with the Sherman Act? Second, assuming that the challenged statute mandates conduct which among private parties would violate the Sherman Act, does the "state action" doctrine immunize that conduct from the operation of the federal antitrust laws? *See Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). Finally, assuming that the answer to the first question is "yes" and to the second question "no", does the 21st Amendment insulate the challenged statute from the operation of the Sherman Act? Because I determine that the challenged statute on its face does not encourage conduct that runs afoul of the Sherman Act, I deny plaintiff's motion. Moreover, I conclude that even if the challenged statute were found to be in conflict with the federal law, the "state action" doctrine would immunize it from antitrust challenge. Because of the conclusions reached on these first two issues, I express no opinion on the impact of the 21st Amendment upon these facts.

### A. Section 101–b Does Not Conflict with Section 1 of the Sherman Act

■ Whether plaintiffs object to the sharing of price information, the freezing of prices, or the effect of these and other practices on transactions between different levels of the industry, section 101–b, at bottom, is a price-posting rather than a resale price maintenance statute. It requires that each wholesaler publish the prices at which it will sell its products to retailers, permits adjustment *downward* to meet competition, and mandates that it will maintain any prices for a 30-day period. The statute also requires that retailers purchase only liquor and wine sold in compliance with this system. In all other material respects, Section 101–b is silent about retail sales.

Invoking both *Midcal Aluminum Inc., supra,* and *William J. Mezzetti Associates, Inc. v. State Liquor Authority,* 51 N.Y.2d 761, 432 N.Y.S.2d 372, 411 N.E.2d 791 (1980), plaintiffs contend that Section 101–b restrains trade. However, in *Midcal, supra,* 445 U.S. at 102, a resale price maintenance statute was at issue. Similarly in

*Mezzetti,* a resale price maintenance provision in the state liquor law was struck down.

Of greater applicability to this case is *Serlin Wine & Spirit Merchants, Inc. v. Healy,* 512 F.Supp. 936 (D.Conn.), *aff'd sub nom. Morgan v. Division of Liquor Control,* 664 F.2d 353 (2d Cir.1981), which upheld the Connecticut Liquor Control Act against a Sherman Act challenge alleging illegal price fixing and resale price maintenance. In Connecticut, at the initial level of distribution, the manufacturer or out-of-state shipper is required to file with the state a list of prices at which it will sell its products to Connecticut wholesalers in the following month. At the second level, the wholesaler must file with the state a list of prices at which it will offer its products to retailers; this price can be no lower than the wholesalers "cost", as defined by the statute. At the third level, retailers may sell their products at a price not below retailers' "cost". *Id.* at 938. Plaintiffs, in *Serlin,* alleged that this distribution plan was violative of the federal antitrust laws insofar as it allowed manufacturers to control prices at the retail level.

The court, however, found that each party set only its sale prices and that the state, not the parties, set the price *range* at lower levels of distribution. In the California liquor industry resale prices down the line were set by producers, with the state merely enforcing the prices so established.

The New York ABC laws obviously operate in the Connecticut mold rather than the California mold. Section 101–b requires each manufacturer and wholesaler to post its prices and permits adjustment much as does the Connecticut statute. It does not, as the California statute did, go the further step and allow resale price maintenance.

I therefore conclude that there is no conflict between Section 101–b and the Sherman Act.

B. *The State Action Doctrine Insulates Section 101–b 3 from the Operation of the Sherman Act*

■ Even were I to find conduct under the state statute offensive under the federal antitrust laws, such conduct would nevertheless be permissible under the state action doctrine. In *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), the Supreme Court expressed its reluctance to tamper with state regulations in the name of the federal antitrust laws, and in *Midcal,* the court explained the requisite state interest to establish antitrust immunity:

First, the challenged restraint must be "one clearly articulated and affirmatively expressed as state policy"; second, the policy must be "actively supervised" by the State itself.

*Midcal, supra,* 445 U.S. at 105, 100 S.Ct. at 943, *quoting City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 410, 98 S.Ct. 1123, 1135, 55 L.Ed.2d 364 (1978).

The New York ABC laws meet these criteria. As to the first, the statute itself articulates a state policy favoring comprehensive regulation of the industry. *See* Alcoholic Beverage Control Law § 2. Intrastate regulation of alcoholic beverages is clearly an area of regulation entrusted to the states. *See* U.S. Const. amend. XXI. As to the second, it can hardly be denied that the state's supervision in the area is anything but active. New York state itself regulates the monthly price-postings and adjustments.

Given the foregoing, I need not consider the applicability of the 21st Amendment to these facts. The plaintiffs' motion for summary judgment is denied.

So ordered.