## In the Matter of J.A.J. Liquor Store, Inc., Petitioner, v New York State Liquor Authority, Respondent.

Second Department, June 11, 1984

APPEARANCES OF COUNSEL

*Seymour Howard* for petitioner.

*Gloria M. Dabiri* (*Stephen D. Kalinsky* of counsel), for respondent.

OPINION OF THE COURT

BRACKEN, J.

This is a proceeding pursuant to CPLR article 78 to review a determination of respondent State Liquor Authority which, after a hearing, found that petitioner, a retail liquor store licensee, had violated subdivision 4 of section 63 and subdivision 2 of section 101-bb of the Alcoholic Beverage Control Law. By order of the Supreme Court, Nassau County (McGinity, J.), entered July 27, 1981, the proceeding was transferred to this court (CPLR 7804, subd [g]). We must decide whether respondent's determination is supported by substantial evidence (CPLR 7803, subd 4). However, the initial issue for resolution is whether this State's statute prohibiting the retail sale of liquor for off-premises consumption at less than cost (Alcoholic Beverage Control Law, § 101-bb) violates the Sherman Antitrust Act (US Code, tit 15, § 1 *et seq.*), which declares combinations in restraint of trade to be illegal.

 The evidence adduced at the hearing established that on January 25, 1980, respondent's investigators purchased a bottle of Johnny Walker Red Label Scotch Whiskey at petitioner's premises for $9.50, together with a bottle of Bacardi Rum for $6.09. At the time of the sale, the minimum resale price for those products was $9.99 and $6.36, respectively. On the basis of this evidence, respondent determined that petitioner had sold liquor at less than the minimum resale price in violation of subdivision 2 of section 101-bb of the Alcoholic Beverage Control Law. Although the factual evidence substantially supports this portion of respondent's determination, we are nevertheless constrained to annul the determination upon the ground that the statute alleged to have been violated is invalid.

Subdivision 2 of section 101-bb of the Alcoholic Beverage Control Law prohibits the retail sale of liquor for off-premises consumption at a price which is less than cost. The statute defines "cost" as the "price" of an item of liquor to the retailer plus 12%, which is declared to be the legislatively determined average minimum overhead necessarily incurred by the retailer in the sale of such an item (Alcoholic Beverage Control Law, § 101-bb, subd 2, par [b]). The term "price" is defined as the bottle price to the retailer contained in a monthly schedule filed with the State Liquor Authority by the manufacturer or wholesaler from whom the retailer purchases liquor and which schedule is in effect at the time the retailer sells such item (Alcoholic Beverage Control Law, § 101-bb, subd 2, par [b]). The "price" is established by the manufacturer or wholesaler in its monthly schedule, without any review as to its reasonableness or other control by the State (Alcoholic Beverage Control Law, § 101-bb, subd 2, par [b]; § 101-b). Thus, although the State requires the retailer to sell liquor at not less than 12% above the wholesale price (Alcoholic Beverage Control Law, § 101-bb, subd 2, par [b]), the price is fixed in the first instance by the manufacturer or wholesaler, who thereby effectively controls the price charged by all retailers purchasing from such manufacturer or wholesaler. As such, the State's statutory scheme merely authorizes price setting by private parties and, in essence, enforces the prices so set.

We previously have held that subdivision 2 of section 101-bb fell within the intended scope of the Twenty-First Amendment to the United States Constitution and constituted State action which did not conflict with the Sherman Antitrust Act (*Matter of Theodore Polon, Inc. v State Liq. Auth.*, 59 AD2d 946; see, also, *Matter of Ritter Wines & Liqs. v State Liq. Auth.*, 70 AD2d 643). Moreover, we reached the same conclusion with respect to the parallel provision of the statute governing minimum consumer resale prices of wine, and our determination was affirmed by the Court of Appeals (Alcoholic Beverage Control Law, § 101-bbb; see *Matter of Mezzetti Assoc. v State Liq. Auth.*, 66 AD2d 800, affd 49 NY2d 753). However, the Court of Appeals subsequently granted reargument in *Matter of*

*Mezzetti Assoc. v State Liq. Auth.* (49 NY2d 981) and thereafter reversed this determination of statutory validity (51 NY2d 761) on the basis of *California Liq. Dealers v Midcal Aluminum* (445 US 97).

In *Midcal* (*supra*), the Supreme Court of the United States considered a challenge to California's system of resale price maintenance for wine. Under the California statutes, wine producers, wholesalers and rectifiers were required to file fair trade contracts or price schedules with the State, and no State-licensed wine merchant was permitted to sell wine to a retailer at a price other than the price stated in the contract or schedule (Cal Bus & Prof Code, §§ 24862, 24866). As is the case in New York, the State of California exercised no control over the wine prices set by the producers, wholesalers or rectifiers (*California Liq. Dealers v Midcal Aluminum, supra,* pp 99-100).

California's wine pricing system was held to constitute resale price maintenance in violation of the Sherman Antitrust Act, in that the producer was given the power to prevent price competition by "dictating" the prices charged by wholesalers (*California Liq. Dealers v Midcal Aluminum, supra,* p 103).

Having determined that the Sherman Antitrust Act was implicated, the court then considered whether California's involvement in the price-setting program was sufficient to establish antitrust immunity under *Parker v Brown* (317 US 341), i.e., whether the challenged restraint was clearly articulated and affirmatively expressed as State policy, and whether that policy was actively supervised by the State itself (*California Liq. Dealers v Midcal Aluminum, supra,* pp 103, 105). The court found that the California resale price maintenance scheme satisfied the first prong of the test for antitrust immunity, in that the legislative policy of permitting resale price maintenance was clearly reflected in the statutes. However, California's program did not satisfy the second prong of the *Parker* test, since the State merely authorized price setting and enforced prices set by private parties, without exercising any control, monitoring or review over the prices set (*California Liq. Dealers v Midcal Aluminum, supra,* pp 105-106). Thus, the

court concluded that the State of California was not cloaked with antitrust immunity in this instance.

Finally, the court rejected the argument that application of the Sherman Antitrust Act against the State was barred by section 2 of the Twenty-First Amendment to the United States Constitution, which provides: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited".

The court noted that the California courts had identified that State's interests protected by the resale price maintenance system as: (1) promoting temperance; and (2) promoting orderly market conditions by protecting small licensees from bargain sales and price-cutting policies of the larger retailers (*California Liq. Dealers v Midcal Aluminum, supra,* pp 111-112, citing *Midcal Aluminum v Rice,* 90 Cal App 3d 979, 983, and *Rice v Alcoholic Beverage Control Appeals Bd.,* 21 Cal 2d 431, 451, 456). The court accepted the determination of the California courts that there was little correlation between price maintenance and temperance, or between price maintenance and the survival of small retailers, and concluded that the asserted State interests were outweighed by the national policy favoring competition, as reflected in the Sherman Antitrust Act. Accordingly, the Twenty-First Amendment did not permit the State to regulate wine prices in a manner violative of the Sherman Antitrust Act (*California Liq. Dealers v Midcal Aluminum, supra,* pp 113-114).

A comparison of this State's retail price maintenance system for liquor (Alcoholic Beverage Control Law, § 101-bb) and those resale price maintenance systems for wine which have been declared to have impermissibly restrained trade (*California Liq. Dealers v Midcal Aluminum,* 445 US 97, *supra; Matter of Mezzetti Assoc. v State Liq. Auth.,* 51 NY2d 761, *supra*), reveals no substantive differences. Under the California statutes invalidated in *Midcal (supra),* no State-licensed wine merchant was permitted to sell wine to a retailer at a price other than that established by the producer, wholesaler or rectifier in a fair

trade contract or price schedule filed with the State (*California Liq. Dealers v Midcal Aluminum, supra,* pp 99-100). Under the New York statute invalidated in *Mezzetti* (*supra*) on the authority of *Midcal* (*supra*) (see *Matter of Mezzetti Assoc. v State Liq. Auth.,* 51 NY2d 761, 762, *supra*), licensees authorized to sell wine at retail for off-premises consumption were prohibited from selling at less than the minimum consumer retail price established by the manufacturer or wholesaler in price schedules filed annually with the State Liquor Authority (Alcoholic Beverage Control Law, § 101-bbb). Under the statute applicable to the present case (Alcoholic Beverage Control Law, § 101-bb, subd 2), licensees authorized to sell liquor at retail for off-premises consumption are prohibited from selling at less than 12% above the price to the retailer as established by the manufacturer or wholesaler in monthly price schedules filed with the State Liquor Authority.

The New York statutes differ somewhat from their California counterparts in that New York proscribes resale at *less than* a certain price, while California prohibited resale at *other than* a certain price. In addition, both sections 101-bb and 101-bbb permit licensed retailers to sell at less than the minimum retail price upon written permission of the State Liquor Authority, which may be granted for good cause shown and for reasons consistent with the purpose of the statutes (Alcoholic Beverage Control Law, § 101-bb, subd 3; § 101-bbb, subd 5). However, these distinctions do not alter the essential character of New York's statutory scheme, under which manufacturers and wholesalers are empowered to dictate the minimum prices to be charged by retailers, thereby placing a severe restraint upon competition. Moreover, the Court of Appeals apparently concluded that New York's statute governing consumer resale price of wine (Alcoholic Beverage Control Law, § 101-bbb) was indistinguishable from the California statute found in *Midcal* (*supra*) to have violated the Sherman Antitrust Act (see *Matter of Mezzetti Assoc. v State Liq. Auth.,* 51 NY2d 761, 762, *supra*). Thus, we conclude that this State's parallel provision which prohibits retail sales of liquor at less than cost (Alcoholic Beverage Control Law, § 101-bb) constitutes retail price maintenance which restrains trade in

violation of the Sherman Antitrust Act (see *California Liq. Dealers v Midcal Aluminum, supra,* p 102).

Having determined that the resale price maintenance system created by section 101-bb is an unlawful restraint on trade, the next question is whether New York's regulation of retail liquor sales under that section is immune from Federal antitrust legislation (see *Parker v Brown,* 317 US 341, *supra*). A two-pronged test for determining the applicability of antitrust immunity has been established: "First, the challenged restraint must be 'one clearly articulated and affirmatively expressed as state policy'; second, the policy must be 'actively supervised' by the State itself" (*California Liq. Dealers v Midcal Aluminum,* 445 US 97, 105, *supra,* citing *Lafayette v Louisiana Power & Light Co.,* 435 US 389, 410).

The New York resale price maintenance system for liquor clearly satisfies the first prong of this test, since the State's policy of fostering and promoting temperance in the consumption of alcoholic beverages and in promoting the orderly sale and distribution of liquor is both clearly articulated and affirmatively expressed in the statute itself (Alcoholic Beverage Control Law, § 101-bb, subd 1; see, also, *House of Spirits v Doyle,* 72 Misc 2d 1036, affd 43 AD2d 880). However, it is equally clear that the State has failed to satisfy the second prong of the test, because it does not actively supervise its resale price maintenance system. As we have already noted, the statute permits liquor prices to be set by manufacturers or wholesalers, who thereby effectively control the prices charged by retailers (Alcoholic Beverage Control Law, § 101-bb, subd 2). The State is given no authority to either establish liquor prices or to review the reasonableness of the prices set by the manufacturers or wholesalers. Thus, like the California resale price maintenance system which was found in *Midcal* (*supra,* pp 105-106) not to be immune from the Sherman Antitrust Act, New York merely authorizes private parties to set prices and then enforces those prices. A State cannot "give immunity to those who violate the Sherman Act by authorizing them to violate it, or by declaring that their action is lawful" (*Parker v Brown, supra,* p 351). Therefore, it is our conclusion that the resale price maintenance system cre-

ated by section 101-bb is not immune from the provisions of the Sherman Antitrust Act.

Finally, we reject any claim that application of the Sherman Antitrust Act against the State is barred by the Twenty-First Amendment. The interests of New York which are protected by its resale price maintenance system, i.e., promotion of temperance and orderly market conditions (Alcoholic Beverage Control Law, § 101-bb, subd 1; see, also, *House of Spirits v Doyle,* 72 Misc 2d 1036, affd 43 AD2d 880, *supra*), are the very same interests which were identified by California in support of its resale price maintenance statutes. In *Midcal* (*supra,* pp 110-114), the Supreme Court determined that those State interests were subordinate to the Federal interest in enforcing a national policy favoring competition, as expressed through the Sherman Antitrust Act. While the court refused to rule out the possibility that those same State interests could, in a given case, prevail against the Federal interests in a competitive economy (*California Liq. Dealers v Midcal Aluminum, supra,* pp 113-114), nothing in the record before us causes us to conclude that this is such a case. In fact, the announced legislative assertion of policy that New York's resale price maintenance system for liquor furthers the State's interest in promoting temperance and an orderly market for alcoholic beverages (Alcoholic Beverage Control Law, § 101-bb, subd 1) has been undercut, to some degree, by studies concluding that resale price maintenance in this State is contrary to the American system of free enterprise and has had no significant effect upon the consumption of alcohol or upon the incidence of social problems related thereto (*Seagram & Sons v Hostetter,* 16 NY2d 47, 53-55, affd 384 US 35, 38-39, reh den 384 US 967; Moreland Comm Report No. 1, p 3; Moreland Comm Report No. 3, p 17; Governor's Liquor Control Recommendations, Feb. 10, 1964, NY Legis Ann, 1964, pp 484-489). Accordingly, we conclude that here, the Twenty-First Amendment does not shield the State from the provisions of the Sherman Antitrust Act.

We determine that subdivision 2 of section 101-bb of the Alcoholic Beverage Control Law is invalid as a violation of the Sherman Antitrust Act, and to the extent that our

prior decisions are to the contrary, they are hereby overruled. In view of our holding, therefore, that portion of respondent's determination which found petitioner to have violated section 101-bb must be annulled.

Respondent also found that petitioner had violated subdivision 4 of section 63 of the Alcoholic Beverage Control Law, which prohibits persons licensed to sell liquor at retail for off-premises consumption from engaging in any other business on the licensed premises. The evidence in this regard established that on December 18, 1979, respondent's investigators entered the licensed premises and observed displays of liquor with stuffed animals. They then purchased a gift package consisting of a bottle of Black and White Scotch and a stuffed animal for $18. Morris Tarnofsky, president and sole stockholder of petitioner J.A.J. Liquor Store, testified that he had paid approximately $8 for the stuffed animal and an additional sum for the wrapping paper and bow with which the gift package had been sold. At that time, he was selling the Black and White Scotch alone for $8.99. Mr. Tarnofsky maintained that the stuffed animals were sold only as part of gift packages of liquor; he had never sold any of the animals separately and would not do so.

■ Based on the foregoing, we conclude that respondent's determination that petitioner had engaged in another business on the licensed premises was not supported by substantial evidence (CPLR 7803, subd 4; *Matter of Pell v Board of Educ.*, 34 NY2d 222, 230). It is uncontroverted that the stuffed animals were sold by petitioner at cost and only as part of gift packages of liquor. As such, the sale of these items constituted an inextricable part of his retail liquor business rather than a separate profit-generating business (cf. *Matter of Anchor Liqs. v State Liq. Auth.*, 31 AD2d 812, apps dsmd 26 NY2d 694). Accordingly, that portion of respondent's determination which found petitioner to have violated subdivision 4 of section 63 of the Alcoholic Beverage Control Law must also be annulled.

LAZER, J. P., THOMPSON and RUBIN, JJ., concur.

Petition granted, determination of the New York State Liquor Authority, dated June 1, 1981, annulled, on the law, with costs, and charges dismissed.