In the Matter of AFFILIATED DISTILLERS BRANDS CORP., Petitioner, v. STATE LIQUOR AUTHORITY, Respondent.
In the Matter of RENFIELD IMPORTERS, LTD., Petitioner, v. STATE LIQUOR AUTHORITY, Respondent.
In the Matter of " 21 " BRANDS, INC., Petitioner, v. STATE LIQUOR AUTHORITY Respondent.
In the Matter of VICTOR FISCHEL & CO., INC., Petitioner, v. STATE LIQUOR AUTHORITY, Respondent.
In the Matter of AUSTIN, NICHOLS & CO., INC., Petitioner, v. STATE LIQUOR AUTHORITY, Respondent.
In the Matter of McKESSON LIQUOR CO., DIVISION OF FOREMOST-McKESSON, INC., Petitioner, v. STATE LIQUOR AUTHORITY, Respondent.
In the Matter of PAUL MASSON, INC., Petitioner, v. STATE LIQUOR AUTHORITY, Respondent.

First Department, June 24, 1969.

*O. John Rogge* of counsel (*Steven A. Chernis* and *Max J. Halpern* with him on the brief; *Weisman, Celler, Allan, Spett & Sheinberg,* attorneys), for Affiliated Distillers Brands Corp., petitioner.

*Irving J. Seaver* of counsel (*Nathaniel Kaplan,* attorney), for Renfield Importers, Ltd., petitioner.

*William B. Schreiber* of counsel (*Lester H. Schreiber* with him on the brief; *Schreiber & Schreiber,* attorneys), for " 21 " Brands, Inc., and others, petitioners.

*M. David Tell* of counsel (*Galef & Jacobs,* attorneys), for Paul Masson, Inc., petitioner.

*Brenda Soloff* of counsel (*Samuel A. Hirshowitz* with her on the brief; *Louis J. Lefkowitz, Attorney-General*), for respondent.

McNally, J. These seven article 78 proceedings present the common issue of the applicability of section 101-b (subd. 3, par. [d]) of the Alcoholic Beverage Control Law (" ABC Law ") to the transactions hereafter described.

On February 10, 1964, in a special message to the Legislature, the Governor urged the enactment of proposed amendments to the ABC Law recommended by the Moreland Commission in a report on its study of the State's liquor control laws and regulations. (McKinney's Sess. Laws, 1964, pp. 1945–1948.)

The message adverts to the findings of the Moreland Commission with regard to retail prices. The State Liquor Authority theretofore enforced retail prices of packaged liquor. The prices, however, were fixed by the distillers and were not subject to regulation. The Authority believed that price discrimination by distillers and wholesalers caused price wars. Nevertheless, package store owners were subject to administrative sanctions if they attempted to reduce prices to their customers. New York consumers were compelled to pay on the average more than one dollar per fifth of liquor, thus foisting on New Yorkers a surcharge of about $150 million a year. The Moreland Commission recommended the repeal of former section 101-c of the ABC Law which compelled the Authority to maintain the resale prices dictated by the distillers.

Chapter 531 of the Laws of 1964 is responsive to the Governor's special message. Section 8 thereof expresses the intention of the Legislature that (1) fundamental principles of price competition should prevail in the sale and distribution of liquor in this State; (2) that consumers in this State shall not be discriminated against by paying unjustifiably higher prices than those paid by consumers in other States; (3) that the repeal of section 101-c will provide a basis for eliminating such discrimination; and (4) to forestall monopolistic and discriminatory practices, the sale of liquor should be subject to regulation as provided in section 9 of the act. Section 9 enacted paragraph (d) of subdivision 3 of section 101-b of the ABC Law.

Paragraph (d) of subdivision 3 as enacted in 1964 and amended by chapter 798 of the Laws of 1967 provides: "(d) There shall be filed in connection with and when filed shall be deemed part of the schedule filed for a brand of liquor pursuant to paragraph (a) of this subdivision an affirmation duly verified by the owner of such brand of liquor, or by the wholesaler designated as agent for the purpose of filing such schedule if the owner of the brand of liquor is not licensed by the authority, that the bottle and case price of liquor to wholesalers set forth in such schedule is no higher than the lowest price at which such item of liquor will be sold by such brand owner or such wholesaler designated as agent, or any related person, to any wholesaler anywhere in any other state of the United States or in the District of Columbia, or to any state (or state agency) which owns and operates retail liquor stores (i) at any time during the calendar month for which such schedule shall be in effect, and (ii) if a like affirmation has been filed at least once but was not filed during the calendar month immediately preceding the month in which such schedule is filed, then also at

any time during the calendar months not exceeding six immediately preceding the month in which such schedule shall be in effect and succeeding the last calendar month during which a like affirmation was in effect.  As used in this paragraph (d), the term ' related person ' shall mean any person (1) in the business of which such brand owner or wholesaler designated as agent has an interest, direct or indirect, by stock or other security ownership, as lender or lienor, or by interlocking directors or officers, or (2) the exclusive, principal or substantial business of which is the sale of a brand or brands of liquor purchased from such brand owner or wholesaler designated as agent, or (3) which has an exclusive franchise or contract to sell such brand or brands.''

Petitioners argue invalidity of the statute on various constitutional bases, considered and rejected in *Seagram & Sons* v. *Hostetter* (384 U. S. 35).

It is undisputed that petitioners filed with the Authority schedules of prices for brands of liquor affirmed to be no higher " than the lowest price at which [they] will be sold by such brand owner or such wholesaler designated as agent, or any related person, to any wholesaler   *   *   *   at any time during the calendar month for which such schedule shall be in effect '' It is also undisputed that petitioners filed with liquor authorities of other States price schedules for identical brands of liquor which for the months governed by the New York schedules listed lower wholesale prices.

A " sale " is defined in the ABC Law as follows (§ 3, subd. 28) : " ' Sale ' means any transfer, exchange or barter in any manner or by any means whatsoever for a consideration, and includes and means all sales made by any person, whether principal, proprietor, agent, servant or employee of any alcoholic beverage and/or a warehouse receipt pertaining thereto.  ' To sell ' includes to solicit or receive an order for, to keep or expose for sale, and to keep with intent to sell and shall include the delivery of any alcoholic beverage in the state.''

In the light of the legislative history of paragraph (d) of subdivision 3 of section 101-b, we are of the opinion that the Legislature intended the full scope of " sale " as defined in subdivision 28 of section 3, in providing for the affirmation that the " price of liquor to wholesalers set forth in such schedule is no higher than the lowest price at which such item of liquor will be sold   *   *   *   during the calendar month for which such schedule shall be in effect ''.  Petitioners filed the out-of-State schedules, thereby enabling the out-of-State sale of the scheduled brands at the prices therein set forth.  The filing of

said schedules constituted solicitation of orders for the brands listed. (*Garcia & Co.* v. *State Liq. Auth.*, 30 A D 2d 949.)

Petitioners adduced testimony to the effect that they instituted internal measures to preclude sales in and outside the State during the months involved in the New York filings. Negative evidence of this character is of doubtful probity, since it does not appear the petitioners during the relevant months had possession or control of all the available sources of the scheduled brands of liquor. (Cf. *Latourelle* v. *New York Cent. R. R. Co.*, 301 N. Y. 103, 108; 2 Wigmore, Evidence [3d ed.], § 664.)

That petitioners may have refrained from selling during the months involved does not mitigate the legal effect of the filed schedules, which enabled sales conforming to the scheduled prices out of supplies not in the control of petitioners.

The Moreland Commission and the Authority disapproved, and the Governor recommended measures and the Legislature intended to prevent, price discrimination by wholesalers and distillers against New York consumers. If the filing of disparate schedules enabling sales within and without this State at the prices therein set forth is to be rendered nugatory by reference to the internal procedures of the filing parties, then price discrimination against New York consumers, the evil sought to be eliminated, will be perpetuated.

Petitioner Austin, Nichols & Co. claims the New York filing was erroneous due to the inexperience of a subordinate, who did not testify. This is not a defense.

Petitioner Paul Masson, Inc., by letter dated April 3, 1967, requested permission to correct the prices on the May 1967 schedules, which the Authority denied on April 5, 1967. The charges against this petitioner relate to the schedules for the months of March and April, 1967. The determination as to the May 1967 schedule is of no relevance on the charges here involved.

Respondent suspended the licenses of petitioners for 10 days deferred and directed in each case a $2,500 bond claim. We are of the opinion, however, that the fines imposed were excessive. On the facts and in the exercise of discretion, we modify the determinations so as to reduce the fines to $500, and otherwise confirm, without costs and without disbursements. (*Garcia & Co.* v. *State Liq. Auth.*, 30 A D 2d 949, *supra*.)

EAGER, J. P., CAPOZZOLI, MCGIVERN and STEUER, JJ., concur.

Determinations of respondent modified, on the facts and in the exercise of discretion, so as to reduce the fines to $500, and as so modified, confirmed, without costs and without disbursements.