**JOSEPH E. SEAGRAM & SONS, INC., an Indiana Corporation on behalf of its division General Wine & Spirits Company and all other divisions, Plaintiff,**

v.

**Anthony V. GAZZARA, Chairman, Hugh B. Marius, Robert Doyle, Terrence Flynn and Frederick T. Pannozo, as Commissioners, and Barbara Joanni Lord, as Secretary of the State Liquor Authority, Division of Alcoholic Beverage Control, State of New York, Defendants.**

No. 83 Civ. 6825 (LBS).

United States District Court, S.D. New York.

May 22, 1985.

As Amended May 28, 1985.

674

Simpson Thacher & Bartlett, New York City, for plaintiff; David W. Ichel, Joseph F. Tringali, New York City, of counsel.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City, for defendants; Howard L. Zwickel, Marla Tepper, Asst. Attys. Gen., New York City, of counsel.

Anderson Russell Kill & Olick, P.C., New York City, for Peerless Importers, Inc., Lawrence Kill, Steven M. Pesner, Daniel N. Sang, New York City, of counsel.

Buchman, Buchman & O'Brien, New York City, for Capitol Distributors Corp., Knickerbocker Liquors Corp. and Star Industries, Inc.; Michael Newman, New York City, of counsel.

Whiteman, Osterman & Hanna, Albany, N.Y., for The New York State Wholesale Liquor Ass'n; Michael Whiteman, Albany, N.Y., of counsel.

Windels, Marx, Davies & Ives, New York City, for Charmer Industries, Inc., Anthony Dean, New York City, of counsel.

## OPINION

SAND, District Judge.

■ Plaintiff, Joseph E. Seagram & Sons, Inc., challenges the constitutionality of New York's liquor price affirmation statute, N.Y.ABC Law § 101–b(3), contending that it is violative on its face of the Commerce Clause. Plaintiff seeks a judgment declaring the statute unconstitutional and enjoining the defendant officials of the State Liquor Authority (hereinafter "SLA") from enforcing it. Both sides have moved for summary judgment.[1] The New York

1. The present motion is a further stage in proceedings which were the subject of this Court's Opinion and order of September 29, 1983, declining to issue a preliminary injunction against the application of New York's affirmation statute to plaintiff's Chivas Regal Quantity Discount Plan for October, 1983. An application for a stay of that order was argued before Judge Kearse of the Court of Appeals for the Second Circuit but was withdrawn before a decision was rendered. *See* Transcript of oral argument before this Court, October 11, 1984, p. 5. Plaintiff subsequently amended its complaint to seek declaratory and injunctive relief on the ground

that New York's affirmation statute is, on its face, violative of the Commerce Clause.

Plaintiff's amended complaint claims, in passing, that New York's affirmation statute is unconstitutional both "on its face and *as applied.*" First Amended Complaint, paragraph 12 (emphasis added). However, plaintiff has not identified either in its amended complaint or in its motion for summary judgment, any particular interpretation of the statute by the SLA with which it takes issue. Moreover, both in its papers filed with the Court and at oral argument, plaintiff has consistently characterized its amended complaint as a challenge to the *facial*

State Wholesale Liquor Association, together with various individual liquor suppliers, have intervened on behalf of the defendants. For the reasons set forth below, we conclude that the statute does not, on its face, offend the Commerce Clause.[2]

Under New York's affirmation statute, distillers who sell liquor to New York wholesalers must file a monthly schedule of the prices that will be charged for their products in New York State. N.Y. ABC Law § 101–b(3)(a). Those products may not be sold in New York except at the prices listed in the schedule "unless prior written permission of the [SLA] is granted for good cause shown and for reasons not inconsistent with the purpose" of the statute. *Id.* In addition, the schedule must be accompanied by an affirmation "that the ... price of liquor to wholesalers set forth in such schedule is no higher than the lowest price at which such items of liquor will be sold ... in any other state or in the District of Columbia ... at any time during the calendar month for which such schedule shall be in effect ..." Section 101–b(3)(d). The making of a false statement in an affirmation filed pursuant to § 101–b(3)(d) is a misdemeanor, punishable by fine or imprisonment or both. Section 101–b(3)(h). Failure or refusal to comply with any other aspect of the scheduling and affirmation requirements may result in revocation, cancellation or suspension of any

license issued pursuant to that statute, and in the imposition of a fine. Section 101–b(6).

The statute, in its present form, has been in effect since 1967. An earlier version of the statute, which required the filing of an affirmation based on the *preceding* month's prices, was upheld by the Supreme Court in *Seagram & Sons, Inc. v. Hostetter*, 384 U.S. 35, 86 S.Ct. 1254, 16 L.Ed.2d 336, *reh'g denied*, 384 U.S. 967, 86 S.Ct. 1583, 16 L.Ed.2d 679 (1966). Until recently, it was assumed that the amendment of the statute in 1967 did not affect its constitutionality. *See, e.g., Affiliated Distillers Brands Corp. v. State Liquor Authority*, 32 A.D.2d 336, 301 N.Y.S.2d 316, 319 (1st Dept.1969), *aff'd*, 26 N.Y.2d 982, 311 N.Y.S.2d 25, 259 N.E.2d 492 (1970).[3]

Plaintiff now raises two challenges to the statute's validity under the Commerce Clause. The first is directed toward the statute as amended, and is based upon the recent decision of the Court of Appeals for this Circuit in *United States Brewers Ass'n v. Healy*, 692 F.2d 275 (2d Cir.1982), *aff'd w/o op.*, — U.S. —, 104 S.Ct. 265, 78 L.Ed.2d 248 (1983). The second challenge is, in essence, a challenge to the current validity of *Seagram v. Hostetter, supra*, a 1966 decision of the Supreme Court which held that liquor price affirmation statutes are a permissible exercise of

constitutionality of the statute. As a result, we do not regard the issue of the statute's constitutionality as applied as having been presented to this Court for resolution.

Defendants have challenged the amended complaint on the ground that it fails to state a case or controversy. That challenge, however, is clearly without merit since it is conceded that the statute in question is being enforced and that plaintiff is subject to its requirements. *See, e.g., Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972).

**2.** Last month, in *Brown-Forman Distillers Corp. v. State Liquor Authority*, 64 N.Y.2d 479, 490 N.Y.S.2d 128, 479 N.E.2d 764 (1985), the New York Court of Appeals reached a similar conclusion, though on grounds differing from those relied on by this Court. *See infra*, note 4.

**3.** The statute was amended because its requirement of an affirmation based on the preceding month's prices had proven unworkable in a number of respects. Among them was the effect such a requirement had on a distiller's ability to raise prices in other states with affirmation requirements. A distiller could not raise prices in any state with an affirmation requirement based on *current* prices unless it *simultaneously* discontinued sales for a month in each state having an affirmation requirement based on the *preceding* month's prices. Nor could a distiller raise prices in any state with an affirmation requirement based on the *preceding* month's prices unless it first discontinued sales for a month in all other states having that requirement. At the urging of numerous distillers, among others, the law was amended to require an affirmation based upon *current* prices. *See generally* N.Y.L.1967 ch. 798, Governor's Bill Jacket.

the regulatory authority granted to the states by the Twenty-First Amendment. The basis for this challenge is the Supreme Court's recent decision in *Bacchus Imports, Ltd. v. Dias,* —— U.S. ——, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984). We consider each challenge in turn.

*The Statute As Amended*

Plaintiff first contends that the decision in *United States Brewers Ass'n v. Healy, supra,* which invalidated the beer price affirmation provision of the Connecticut Liquor Control Act, requires invalidation of the current version of New York's affirmation statute.

The statute at issue in *Healy* required the filing of a monthly beer price schedule together with an affirmation that the prices listed in the schedule were no higher than the lowest prices at which beer would be sold in the three states adjoining Connecticut during that month. The schedule was not subject to amendment, nor could beer be sold except at the price listed in the schedule. 692 F.2d at 276–78.

The Second Circuit held that the Connecticut statute effectively set a minimum price for beer in a four-state area, and that in doing so, it ran afoul of the Commerce Clause. The Court noted that "it has been held repeatedly that where the practical effect of a state's legislation is to control conduct in *other* states, the regulation violates the Commerce Clause," *id.* at 279 (citations omitted), and that while the Twenty-First Amendment gives states broad powers to regulate importation and in-state traffic in alcoholic beverages, "nothing in the Twenty-First Amendment suggests that a state may regulate the sale of liquor outside of its own territory." *Id.* at 281.

The Court in *Healy* distinguished *Seagram v. Hostetter, supra,* finding that the statute upheld there:

differed significantly from the Connecticut statute, because, unlike Connecticut's beer price affirmation provisions which control brewers' future conduct in the states surrounding Connecticut, the New York law in Seagram merely required that New York prices reflect what had been charged elsewhere in the past. Thus, the New York law, although it affected the prices that manufacturers would choose to set in other states, did not limit the freedom of a manufacturer at any given time to raise or lower prices in any other state.

*Id.* at 283.

Plaintiff suggests that *Healy* represents a holding that all "prospective affirmation" statutes—that is, those requiring an affirmation as to the prices that *will be* charged in other states—are invalid under the Commerce Clause. We do not read *Healy* so broadly. The *Healy* Court itself noted that "[g]iven the latitude allowed a state under the Twenty-First Amendment to regulate the sale of liquor within its own borders, the holding in *Seagram* might well validate beer price regulation less intrusive then the present Connecticut statute, such as a requirement simply that a brewer set its Connecticut prices at the lowest levels it chooses to set in the surrounding states ... leaving those out-of-state prices unregulated by Connecticut." 692 F.2d at 283–84 (citation omitted). *Cf. United States Brewers Ass'n v. Rodriguez,* —— U.S. ——, 104 S.Ct. 1581, 80 L.Ed.2d 115 (1984) (Stevens, J., concurring in dismissal of appeal) (*Healy* does not undermine the validity of *Seagram v. Hostetter* ).

We understand *Healy* to require invalidation of a prospective affirmation statute only when the practical effect of the statutory scheme is to prohibit a manufacturer from raising or lowering prices in another state for a given period of time. We are not persuaded that the New York statute has such an effect.[4]

---

**4.** In *Brown-Forman Distillers Corp. v. State Liquor Authority, supra,* the New York Court of Appeals found the statute struck down in *Healy* to be distinguishable from New York's affirmation statute on grounds of purpose and degree

of control over pricing in other states. Neither ground is relied upon by this Court.

With respect to purpose, the *Brown-Forman* court suggested that "the Connecticut statute was designed to discriminate against out-of-state

As is evident from our earlier summary of its provisions, the New York statute is not identical to the statute invalidated in *Healy*. The New York statute provides, as the Connecticut statute did not, that liquor may be sold in New York at a price other than the scheduled price provided that "prior written permission of the [SLA] is granted for good cause shown and for reasons not inconsistent with the purpose" of the statute. Section 101–b(3)(a). Thus, assuming that a mid-month price reduction in another state constitutes "good cause" and a "reason not inconsistent with the purpose" of New York's statute, it would appear that a distiller could make such a reduction without violating the New York statute so long as he applies to the SLA for permission to make a corresponding reduction in his New York prices. If this is so, it cannot be said that the practical effect of the statute is to prohibit a distiller from lowering prices in other states.

Plaintiff raises a number of objections to this interpretation of the statute. First, it contends that the "good cause" provision relates only to the statute's price *scheduling* requirement and "does not alter or modify the dictates of the *affirmation* provisions." *Plaintiff's Reply Mem.* at page 7, note * (emphasis added). By this, we understand plaintiff to argue that even if a distiller receives permission to lower his New York prices on the ground that he has lowered them elsewhere, he is still subject to prosecution under Section 101–b(3)(h) for having filed a "false" affirmation as to what his prices would be in other states. However, plaintiff has not alleged that the Section in question has been so interpreted at any time during the eighteen years that it has been in effect, nor have we found any suggestion of such an interpretation in New York case law or the rules of the SLA. Nor do we consider that interpretation to be one that is sensible, or likely to be adopted by state authorities. Certainly, the possibility that it *might* be adopted is not grounds for invalidating the statute since it is well established that "statutes should be construed whenever possible so as to uphold their constitutionality." *United States v. Vuitch*, 402 U.S. 62, 70, 91 S.Ct. 1294, 1298, 28 L.Ed.2d 601 (1971).

Plaintiff also contends that the "good cause" provision does no more than give the SLA power "to exempt parties from compliance with an otherwise facially unconstitutional statute" and accordingly does not validate the statute. *Plaintiff's Reply Mem.* at p. 7. So stated, the argument merely begs the question. If the "good cause" provision is construed to include price reductions in other states, then the statute is not unconstitutional on its face.

Once again, we note that plaintiff has not alleged that the SLA has refused or failed to so interpret the statute, nor has

businesses" and thus was protectionist, "while the intent of the New York statute was to prevent continued discrimination against in-state consumers" and thus should not be characterized as protectionist. *Brown-Forman* at 487, 490 N.Y.S.2d 132, 479 N.E.2d 768. As plaintiff notes, however, the Court in *Healy* clearly held that it need not determine the permissibility of the Connecticut statute's purpose since its extraterritorial effect would invalidate it in any case. *See Healy*, 692 F.2d at 281–82. Moreover, we do not believe that either statute can be said to "discriminate" against out-of-state businesses in the sense in which that term has been used in constitutional analysis. *See infra*, at 489 & n. 8.

The second basis upon which the Court in *Brown-Forman* distinguished *Healy* is similarly problematic. The New York court suggested that the impact of the New York statute was "slight" in comparison with that of the Connecti-cut statute because the former was "nationwide in scope and imitated by approximately 20 other states throughout the nation," and because liquor, unlike beer, is already subject to state and federal price control and therefore less "susceptible to free price fluctuation." *Brown-Forman*, 64 N.Y.2d at 488, 490 N.Y.S.2d 132, 479 N.E.2d 768.

The inquiry required by *Healy*, however, is *whether* a statute effectively regulates pricing in other states; the number of states involved is irrelevant. Similarly, while we share the New York court's reluctance to invalidate a statute on the basis of an amendment that, as a matter of practical effect on interstate commerce, appears to have done more good than harm, *see infra*, p. 486 and note 6, nonetheless, as a matter of constitutional theory, we doubt that the validity of a statute under the Commerce Clause can depend upon how many states have enacted it.

this Court found any indication that the statute is not so interpreted.[5] Since the acknowledged purpose of the statute is to prevent New York wholesalers from being charged higher prices than their counterparts in other states, *see Seagram v. Hostetter, supra,* 384 U.S. at 38–40, 86 S.Ct. at 1257–1258, it is difficult to believe that a price reduction in other states does not come within the provision permitting an adjustment to New York prices "for good cause shown and for reasons not inconsistent with the purpose of" the statute.

Finally, plaintiff suggests that the "good cause" provision is discretionary and for that reason insufficient to validate the statute. *See Plaintiff's Reply Mem.* at pp. 7–8. We note, however, that the Supreme Court itself in *Seagram v. Hostetter* found the discretionary nature of the "good cause" provision no bar to reliance on it as a means of avoiding conflict with federal antitrust laws. 384 U.S. at 46, 86 S.Ct. at 1261. As the Court observed, we cannot presume that state authorities will not exercise their discretion in a manner that avoids conflict with federal law. *Id.*

Significantly, despite the fact that the amended New York affirmation statute has been in effect for eighteen years, plaintiff has not suggested how that statute has, *in practice,* proved more burdensome than the statute as originally enacted. The affidavit submitted by M. Jacqueline McCurdy, Vice President-Industry Relations for Seagram, is the only offer of proof on the statute's effect on the liquor industry, and the effect which is discussed by that affidavit (namely, the industry's inability to lower prices only in certain states to reflect seasonal preferences or to meet competition by regional brands) applies as much to the statute as originally enacted as to the statute as amended. Plaintiff's offer of proof, in other words, is relevant to the question whether liquor price affirmation statutes in general are permissible (a question answered in the affirmative by the Supreme Court in *Seagram v. Hostetter*), but it does not support an argument that the New York statute as amended imposes a greater burden on interstate commerce than did the statute upheld by the Supreme Court in *Seagram.*[6]

In sum, with respect to plaintiff's first challenge to the constitutionality of New York's affirmation statute, we find that *United States Brewers Ass'n v. Healy* does not call for invalidation of the statute as amended. The statute struck down in *Healy* was one whose practical effect was to prohibit manufacturers from raising or lowering prices in other states. The New York statute, in contrast, is susceptible of an interpretation which avoids that effect. We may not assume that the state authorities have adopted, or will in the future adopt, a different interpretation. Nor has plaintiff offered any proof that the statute as interpreted or applied by the SLA does in fact create the extraterritorial effect condemned in *Healy.* Indeed, the offer of proof submitted by plaintiff suggests that its complaint is with affirmation statutes generally, not simply with the amendment of the New York statute.

### The Current Validity of Seagram v. Hostetter

Plaintiff's second challenge to the New York statute does, in fact, challenge affirmation statutes generally. Plaintiff contends that price parity requirements constitute "protectionist" legislation, which is forbidden by the Commerce Clause, and that the statute is not saved by the Twenty-First Amendment since that amendment

---

5. Indeed, the facts underlying plaintiff's suit provide some indication that the statute is interpreted with appropriate flexibility. After the SLA disapproved plaintiff's proposed Chivas Regal Quality Discount Plan for October 1983, it did not insist that Seagram forgo the Plan in other states. Instead, it offered to grant approval for Seagram to offer a cash discount in New York equivalent to the product discounts it would offer in other states. *See Joseph E. Seagram & Sons, Inc. v. Gazzara, et al.,* 83 Civ. 6825, *slip op.* at 5, (S.D.N.Y. September 28, 1983).

6. Given the effect of the original statute, *see supra,* note 3, it would seem that the amended version is, if anything, less of a burden on interstate commerce.

is inapplicable to protectionist legislation. In essence, plaintiff argues that the Supreme Court's recent decision in *Bacchus Imports, Ltd v. Dias, supra*, overruled the Court's earlier holding in *Seagram v. Hostetter* that a liquor price affirmation statute is a permissible exercise of the regulatory authority granted to the states by the Twenty-First Amendment.[7]

The statute at issue in *Bacchus* was an Hawaii tax statute that exempted certain locally produced alcoholic beverages from its provisions. The acknowledged purpose of the exemption was to encourage development of the Hawaiian liquor industry. 104 S.Ct. at 3053. The Supreme Court held the tax to be discriminatory both in purpose and effect, and therefore invalid under the Commerce Clause. In addition, finding that the tax "violate[d] a central tenet of the Commerce Clause [and was] not supported by any clear concern of the Twenty-First Amendment," the Court rejected a claim that the Twenty-First Amendment saved the statute. 104 S.Ct. at 3059. The Court observed that "[t]he central purpose of the [Amendment] was not to empower states to favor local industries by erecting barriers to competition," that the Commerce Clause "furthers strong federal interests in preventing economic Balkanization," and that as a result, "[s]tate laws that constitute mere economic protectionism are ... not entitled to the same deference as laws enacted to combat the perceived evils of an unrestricted traffic in liquor." 104 S.Ct. at 3058.

Plaintiff contends that New York's affirmation statute is similarly protectionist and therefore similarly invalid. An affirmation statute, however, is not protectionist in the sense in which that term has been used by the courts. It does not seek to promote local trade by forbidding or discouraging the importation of articles of commerce from another state. *See, e.g., Hunt v. Washington State Apple Advertising*

*Comm'n,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). Nor does it seek to give local residents preferred or exclusive access to the products of a state. *See, e.g., New England Power Co. v. New Hampshire,* 455 U.S. 331, 102 S.Ct. 1096, 71 L.Ed.2d 188 (1982).

Plaintiff cites *Baldwin v. G.A.F. Seelig,* 294 U.S. 511, 55 S.Ct. 497, 79 L.Ed. 1032 (1935) in support of its contention that price affirmation statutes such as New York's are protectionist. However, a comparison of the statute at issue in *Seelig* with the New York statute merely confirms that the latter is not protectionist in the traditional sense of the term.

The statute in *Seelig* set a minimum price for the sale of milk in New York and prohibited the resale of milk in New York that had been purchased out of state at a price below the New York statutory minimum. The Supreme Court held that the statute was invalid under the Commerce Clause on the ground that it attempted to impose New York's minimum price for milk on other states (an issue we have already discussed in connection with plaintiff's challenge based on *United States Brewers Ass'n v. Healy* ), and also on the ground that it sought to protect local dairy farmers by neutralizing the economic advantage which its out-of-state competitors had in the New York market. Justice Cardozo, writing for the Court, found the statute to be the functional equivalent of an import tax in the amount of the difference between out-of-state prices and the New York statutory minimum. 294 U.S. at 521–22, 55 S.Ct. at 499–500.

New York's affirmation statute, by contrast, does not constitute state interference with competition between local and out-of-state industries. The statute instead requires members of a particular industry (whether they are local or out of state) to offer their products to New Yorkers at

---

7. Plaintiff's memorandum in support of its motion for summary judgment cites cases involving commodities other than liquor for the proposition that price parity requirements are "protectionist," and *Bacchus* for the proposition that

the Twenty-First Amendment is inapplicable to protectionist legislation. No mention of *Seagram v. Hostetter* is made, presumably because plaintiff believes it to have been impliedly overruled by *Bacchus.*

prices that are no higher than those offered to other states. Such a statute may have an *effect* on interstate commerce (arguably even a significant anti-competitive effect), but it does not seek to *discourage* interstate commerce, and thus cannot properly be characterized as protectionist.

Plaintiff would expand the definition of "protectionism" to include any statute that "solely seeks to benefit residents at the expense of residents in other states." *Plaintiff's Mem.* at 19. However, such an expansion of the term is plainly inappropriate. It is a rare statute that does *not* seek to benefit local residents, and the qualifying phrase "at the expense of residents in other states" is far too vague to describe a category of statutes that are considered virtually unconstitutional *per se*. *See City of Philadelphia v. New Jersey*, 437 U.S. 617, 624, 98 S.Ct. 2531, 2535, 57 L.Ed.2d 475 (1978).[8]

■ We believe that the term "protectionist" should be limited to its traditional usage—that is, to statutes which forbid or discourage interstate trade and thus conflict so fundamentally with the principles underlying the Commerce Clause that a *per se* rule of invalidation is appropriate.[9] With respect to statutes which do not fall into that category, the appropriate approach is to balance the state's interest in enacting the statute against its effects on interstate commerce. *See Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970).

Indeed, that approach was the one taken by the Supreme Court in *Seagram v. Hostetter, supra*, when it upheld the constitutionality of New York's original affirmation statute. The Court noted that the Twenty-First Amendment gave the states broad authority to regulate the importation and distribution of alcoholic beverages, 384 U.S. at 41–43, 86 S.Ct. at 1258–1260, and found that the alleged extraterritorial effects of the statute were "largely matters of conjecture." *Id.* at 43, 86 S.Ct. at 1260. In particular, the Court observed that it "is by no means clear ... that [the statute] must inevitably produce higher prices in other states, as claimed by appellants, rather than the lower prices sought for New York." *Id.*

We see no reason to question the conclusion of the Court in *Seagram*, and, in any case, have little authority to disturb it. Nonetheless, since the Supreme Court's recent decision in *Bacchus* reflects a heightened concern that the purpose of a state's regulatory enactments bear some relation to the purposes of the Twenty-First Amendment, we pause to note the relation that exists with respect to New York's affirmation statute.

Although the New York statute was one of the first statutory enactments of its kind, New York was by no means one of the first states to impose a price parity requirement on liquor suppliers. At the time of the New York statute's enactment, the seventeen states which operated state liquor monopolies imposed the same obligation in their contracts with liquor suppliers. *See Joseph E. Seagram & Sons, Inc. v. Hostetter*, 16 N.Y.2d 47, 57–58, 262 N.Y. S.2d 75, 209 N.E.2d 701 (1965), *aff'd*, 384

---

**8.** If that language were adopted as the standard, it arguably would invalidate statutes such as a property tax abatement intended to encourage businesses to relocate to a state, a statute establishing a commission to take measures to increase a state's share of the tourist trade, or any other statute that sought to draw business away from another state. Such statutes may be "discriminatory" or "protectionist" in a colloquial sense, but not in the sense in which courts have used these terms in constitutional analysis. The statutes cannot be said to discriminate against trade among the states. *Cf. City of Philadelphia v. New Jersey, supra*, 437 U.S. at 623–28, 98 S.Ct. at 2535–38.

**9.** Certainly, *Bacchus* does not support a broader definition of "protectionism." The statute invalidated in that case fell squarely within traditional usage of the term, and the Court emphasized that it was dealing with a statute that violated "a central tenet" of the Commerce Clause. *Bacchus*, 104 S.Ct. at 3059; *see also Loretto Winery, Ltd. v. Gazzara*, 601 F.Supp. 850 (S.D.N.Y.1985), *aff'd*, 761 F.2d 140 (2d Cir.1985) (*Bacchus* requires invalidation of a statute that permitted a particular wine product to be sold in supermarkets as well as liquor stores, provided that it was made exclusively from New York State grapes).

U.S. 35, 86 S.Ct. 1254, 16 L.Ed.2d 336 (1966); *Seagram v. Hostetter, supra,* 384 U.S. at 43–45, 86 S.Ct. at 1260–1261. These so-called monopoly states were able to induce liquor suppliers to undertake such an obligation by virtue of the leverage they possessed as high-volume purchasers. 384 U.S. at 44 n. 14, 86 S.Ct. at 1260 n. 14. Indeed, at the time *Seagram v. Hostetter* was decided, the State of Pennsylvania reportedly was the largest purchaser of liquor in the world. *Id.*

Both the New York Court of Appeals and the Supreme Court found the willingness of distillers to enter into price affirmation contracts to be an indication that the practice of requiring price affirmations did not impose an unreasonable burden on interstate commerce. 16 N.Y.2d at 57, 262 N.Y.S.2d 75, 209 N.E.2d 701; 384 U.S. at 43–45, 86 S.Ct. at 1260–1261. We believe that the affirmation requirements of the monopoly states are also relevant to the validity of a price affirmation statute as an exercise of the authority granted to the states by the Twenty-First Amendment.

As plaintiff has noted, by requiring a distiller to adopt a single, market-wide price for its products, an affirmation statute arguably could have an anticompetitive effect. *See* Affidavit of M. Jacqueline McCurdy at pp. 7–9. Indeed, with respect to commodities other than alcoholic beverages, it seems unlikely that a state could point to an interest sufficient to outweigh that potential effect. As suggested above, however, market conditions are significantly different with respect to alcoholic beverages.

By virtue of the unique authority which the Twenty-First Amendment grants to the states to control the importation and distribution of alcoholic beverages, state monopolies are permissible where they would not be otherwise. A side effect of that authority is a market in which monopoly states can exert disproportionate leverage. As a result, price affirmation statutes for alcoholic beverages can be justified (as they cannot be for other commodities) as a reasonable means of responding to the market irregularities created by the Twenty-First Amendment, and we believe it is in accord with the purposes of the Amendment to interpret it as authorizing such a response.[10] Thus, with respect to price affirmation statutes, it is particularly appropriate to observe that the rules governing trade in liquor are simply not the same as those governing "trade in bicycles, or cosmetics, or furniture." *Seagram v. Hostetter, supra,* 16 N.Y.2d at 56, 262 N.Y.S.2d 75, 209 N.E.2d 701.

■ In sum, we find no basis for disturbing the Supreme Court's holding in *Seagram v. Hostetter* with respect to the constitutionality of the liquor price affirmation statutes. Such statutes are not "protectionist" in the sense in which that term has been used in constitutional analysis, and thus their constitutionality is not called into question by the Supreme Court's recent decision in *Bacchus Imports, Ltd. v. Dias.* Nor is the Supreme Court's ruling in *Seagram* now questionable in light of the heightened emphasis placed by *Bacchus* on the purposes of the Twenty-First Amendment since liquor price affirmation statutes are in accord with those purposes.

Accordingly, for the reasons stated, plaintiff's motion for summary judgment is denied; defendants' motion is granted.

SO ORDERED.

---

10. Moreover, by counterbalancing a monopoly state's disproportionate leverage in the liquor market, affirmation statutes arguably serve the interests of the Commerce Clause as well since they are more likely to relieve than to exacerbate the " 'mutual jealousies and aggressions of the States' " which concerned the Framers of the Commerce Clause. *Baldwin v. G.A.F. Seelig, supra,* 294 U.S. at 522, 55 S.Ct. at 500 (*quoting* Farrand, Records of the Federal Convention, Vol. II, p. 308).