OPINION OF THE COURT
Herman Cahn, J.
Motion sequence numbers 002 and 003 are consolidated for disposition.
*387 In motion sequence number 002, defendants Charmer Industries, Inc. and Peerless Importers, Inc., move to dismiss the complaint (CPLR 3211 [a] [7]), on the ground that no private right of action for price discrimination exists under the Alcoholic Beverage Control Law. In motion sequence number 003, plaintiffs Diane Serra Inc. and Garnet Wines & Liquors Inc. move for permission to serve a sur-reply to the earlier motion, pursuant to Commercial Division rule 19.
Plaintiffs are wine and liquor retailers; defendants are wine and liquor wholesalers. Both retailers and wholesalers are licensed in accordance with the Alcoholic Beverage Control Law.
By virtue of the Alcoholic Beverage Control Law and the regulations promulgated thereunder, retailers who are delinquent in the payment of the invoices rendered to them are to be reported by their supplier to the State Liquor Authority (SLA), which maintains a “delinquent list.” Retailers on the “delinquent list” must pay for subsequent shipments COD, until the delinquencies are cured, and they are removed from the delinquent list. Plaintiffs are both on the delinquent list.
Defendants are spirits wholesalers, each of whom have the exclusive right to sell numerous popular brands. Plaintiffs assert that they must necessarily carry all or some of these brands to remain competitive.
Plaintiffs allege that defendants offered their customers a 1% discount for payment within 10 days of shipment, but that the discount was not available to retailers on the “delinquent list” such as themselves. Since they are required to pay COD, the failure to grant them the discount is alleged to be price discrimination in violation of the Alcoholic Beverage Control Law and regulations.
Plaintiffs have commenced this action nominally on behalf of a class of liquor retail licensees who, like themselves, were delinquent (see, Alcoholic Beverage Control Law § 101-a [2]) in payments made to at least one defendant and were not offered the discount, although defendants offered it to retail licensees who were not delinquent. In the complaint, plaintiffs assert causes of action for violations of Alcoholic Beverage Control Law § 101-b (2) (a), unjust enrichment, and breach of contract.
Defendants seek dismissal of the first cause of action on grounds that the Alcoholic Beverage Control Law does not provide for a private right of action for price discrimination.
In opposition, plaintiffs concede that no express private right of action exists, but contend that a private right of action for *388 discriminatory pricing practices may be fairly implied from the legislative history and the language of the statute itself.
In the absence of a private right of action expressly authorized by statute, courts must determine whether the Legislature intended to create such right by considering three essential criteria (Sheehy v Big Flats Community Day, 73 NY2d 629 [1989]). “Whether a private cause of action was intended will turn in the first instance on whether the plaintiff is ‘one of the class for whose especial benefit the statute was enacted’ (Motyka v City of Amsterdam, 15 NY2d 134, 139) * * * Important also are what indications there are in the statute or its legislative history of an intent to create (or conversely to deny) such a remedy and, most importantly, the consistency of doing so with the purposes underlying the legislative scheme” (Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 325 [1983] [citations omitted]). Thus, “a private cause of action is implied where it can be shown that plaintiff belongs to the class of legislatively intended beneficiaries and that a right of action would be ‘clearly in furtherance of the legislative purpose’ ” (CPC Intl. v McKesson Corp., 70 NY2d 268, 276 [1987], quoting Burns Jackson Miller Summit & Spitzer v Lindner, supra at 329). Plaintiffs have failed to demonstrate the existence of any of these factors.
Contrary to plaintiffs’ contentions, neither the legislative history, the statute itself nor relevant case law indicates that the Legislature enacted the Alcoholic Beverage Control Law specifically for the benefit of retail licensees or intended that they possess a private right of action for price discrimination.
The Alcoholic Beverage Control Law was enacted “to regulate and control the manufacture, sale and distribution within the state of alcoholic beverages” (Alcoholic Beverage Control Law § 2). The Legislature empowered the SLA “to determine whether public convenience and advantage will be promoted by the issuance of licenses to traffic in alcoholic beverages, the increase or decrease in the number thereof and the location of premises licensed thereby, subject only to the right of judicial review hereinafter provided for” (Alcoholic Beverage Control Law § 2; see, Alcoholic Beverage Control Law § 121).
The Legislature also determined that a prohibition on price discrimination among retailers by wholesalers would foster and promote the interests of the consuming public (see, Alcoholic Beverage Control Law § 101-b [2]). In the statute, the Legislature set forth the public policy behind the prohibition as follows:
*389 “It is the declared policy of the state that it is necessary to regulate and control the manufacture, sale, and distribution within the state of alcoholic beverages for the purpose of fostering and promoting temperance in their consumption and respect for and obedience to the law. In order to eliminate undue stimulation of sales of alcoholic beverages and the practice of manufacturers and wholesalers in granting discounts, rebates, allowances, free goods, and other inducements to selected licensees, which contribute to a disorderly distribution of alcoholic beverages, and which are detrimental to the proper regulation of the liquor industry and contrary to the interests of temperance, it is hereby further declared as the policy of the state that the sale of alcoholic beverages should be subjected to certain restrictions, prohibitions and regulations. The necessity for the enactment of the provisions of this section is, therefore, declared as a matter of legislative determination.” (Alcoholic Beverage Control Law § 101-b [1].)
Courts have considered the legislative purpose behind the price discrimination prohibition and found that the Legislature intended to prevent price discrimination by discouraging monopoly and encouraging competition in order to keep prices low for the benefit of consumers (see, Matter of Great E. Liq. Corp. v State Liq. Auth., 25 NY2d 525 [1969]; Matter of Affiliated Distillers Brands Corp. v State Liq. Auth., 32 AD2d 336 [1st Dept 1969], affd sub nom. Austin, Nichols & Co. v State Liq. Auth., 26 NY2d 982 [1970]).
A review of the specific provisions of the Alcoholic Beverage Control Law indicates that the Legislature vested in the SLA the right to monitor the activities of market participants and to ensure their compliance with the statute, promoting an orderly and regulated market free of improper influence by the market participants for the benefit of the consuming public. The Alcoholic Beverage Control Law expressly authorizes the SLA to monitor and prevent illegal price discrimination by requiring wholesalers to file price schedules monthly with the SLA (see, Alcoholic Beverage Control Law § 101-b [3]). The Alcoholic Beverage Control Law also authorizes the SLA to adjudicate disputes between wholesalers and retailers regarding the fact of payment, the amount due or the quantity sold, and to determine whether the retailer’s name should be published on the delinquent list (see, Alcoholic Beverage *390 Control Law § 101-a [4]). The Alcoholic Beverage Control Law empowers the SLA to penalize a licensee for violations of the statute by revocation or suspension of any license and the imposition of civil penalties for cause (see, Alcoholic Beverage Control Law §§ 10, 17, 101-b [7]).[1] As explained in the legislative memorandum preceding the 1990 amendment of the price discrimination prohibition, the SLA is a licensing and enforcement agency that was intended, among its several responsibilities, to “license persons engaged in the manufacture and sale of alcoholic beverages [and] prevent illegal price discrimination.” (1989 NY Senate-Assembly Bill S 2853-A, A 1470-A.)[2] The filing requirement enables the SLA “to know each month which products are being sold in the state, by whom and at what price and can easily identify any wrongdoing” (1985 NY Senate-Assembly Bill S 4739-C, A 6634-C).
In addition, the Legislature authorized the SLA to adjudicate any claimed violation of the Alcoholic Beverage Control Law upon the complaint of any person (see, Alcoholic Beverage Control Law § 119 [2]). Specifically, the SLA “may on its own initiative or on complaint of any person institute proceedings to revoke, cancel or suspend any retail license and may impose a civil penalty against the licensee after a hearing” (Alcoholic Beverage Control Law § 119 [2]). The court notes that SLA determinations are subject to judicial review in CPLR article 78 special proceedings (see, Alcoholic Beverage Control Law § 121).
*391 In light of the extensive administrative review powers vested in the SLA by the Legislature for interpreting and enforcing the Alcoholic Beverage Control Law, including those provisions regarding payment terms, it is clear that the Legislature intended that a dispute, such as the instant one, concerning pricing discrimination be adjudicated in the first instance by the SLA. Therefore, a private right of action would be wholly inconsistent with the regulatory scheme enacted by the Legislature.
The letter from Patricia Freund, director of SLA wholesale services, produced by plaintiffs, is not to the contrary. In any event, it is not a determination by the SLA, but appears to be her opinion. It is not binding on the court or on the agency, nor is it supportive of plaintiffs’ position here.
Contrary to plaintiffs’ interpretation, Ms. Freund does not suggest that a retailer may sue in its own name on allegations of price discrimination, nor does she suggest that the SLA does not have jurisdiction in the first instance to determine such disputes. At most, Ms. Freund indicates that a wholesaler must uniformly apply the terms of its posted pricing schedule.
The legislative history and statements of purpose demonstrate that, while retail and wholesale licensees may benefit from the Alcoholic Beverage Control Law, the protection of their interests was not a primary motivating factor in enacting the licensing and regulating scheme. Therefore, the creation of a private right of action would be inconsistent with the legislative framework governing the trafficking in alcoholic beverages and in derogation of the Alcoholic Beverage Control Law governing the financial relationship between wholesalers and retailers.
The Alcoholic Beverage Control Law does not provide for a private right of action for price discrimination and, therefore, the claim is fatally defective. That branch of the motion seeking to dismiss the first cause of action is granted.
Those branches of the motion seeking to dismiss the second and third causes of action for unjust enrichment and breach of contract are granted without opposition.
Plaintiffs’ motion for leave to file a sur-reply brief is denied. The CPLR does not provide for submission of sur-reply papers and the Commercial Part rules do not permit such submission, absent express prior permission. Here, in their reply papers, defendants have failed to raise new issues of law or fact which require a response from plaintiffs.
*392 Accordingly, it is ordered that motion seqúence number 002 is granted and the complaint is dismissed in its entirety with costs and disbursements to defendants Charmer Industries, Inc. and Peerless Importers, Inc., as taxed by the clerk of the court; and it is further ordered that motion sequence number 003 is denied.

. Specifically, the price discrimination provisions prohibit wholesale licensees from offering, either directly or indirectly, any discount or other inducement to purchase, except discounts for quantity and prompt payment discounts of no more than 1% where payment is made on or before 10 days from date of shipment (see, Alcoholic Beverage Control Law § 101-b [2]). Each wholesale licensee is required to place the names of retail licensees who fail to pay by the 10th of the month on a delinquent list which it sends to the SLA (see, Alcoholic Beverage Control Law § 101-a [3]). The SLA compiles a composite delinquent list which it furnishes to all wholesale licensees (see, Alcoholic Beverage Control Law § 101-a [3]). Wholesale licensees are prohibited from selling alcoholic beverages to a retail licensee on the delinquent list, unless the retailer pays cash upon delivery of each shipment (see, Alcoholic Beverage Control Law § 101-a [3]). Any wholesaler who fails “to comply with the foregoing provisions of this section shall subject the license of such * * * wholesaler to suspension of not more than five days for the first offense and not more than thirty days for a subsequent offense” (Alcoholic Beverage Control Law § 101-a [3]).

. The SLA was also intended, “through the enforcement of the ABC Law, [to] help protect the enormous amount of revenue received by the state and local governments from the sale of alcoholic beverages, and prevent minors from purchasing alcoholic beverages” (1989 NY Senate-Assembly Bill S 2853-A, A 1470-A).